DONALD H. LONG & others[1] *vs.* BOARD OF APPEALS OF
FALMOUTH & another.[2]

No. 90-P-1464.

Barnstable. January 13, 1992. - March 19, 1992.

Present: KASS, FINE, & LAURENCE, JJ.

*Subdivision Control*, Zoning requirements, Approval not required, Plan-
ning board. *Zoning*, Amendment of by-law or ordinance, Special per-
mit, Professional office.

A landowner was entitled to the protection of a zoning "freeze" under
G. L. c. 40A, § 6, sixth par., based upon a town planning board's en-
dorsement under G. L. c. 41, § 81P, that approval under the Subdivi-
sion Control Law was not required, even though he had submitted a
plan to the planning board solely for the purpose of obtaining the zon-
ing freeze, where the landowner's plan, which was clearly not a subdivi-
sion, objectively met the statutory requirement for endorsement; where,
although the plan submitted for endorsement was different from a plan
submitted three months earlier with the landowner's application for a
special permit, all the land with respect to which the special permit was
sought was included within the proposed new lot shown on the endorsed
plan; and where this court concluded that the presence of a structure on
the property at the time of his application for a special permit should
not deprive the landowner of the protection the freeze provision was
designed to provide a developer (protection during the planning stage of
a building project); consequently, the board of appeals properly granted
the landowner's special permit shortly after a town meeting voted to
change the zoning. [234-237]
There was no merit to arguments by abutters of certain land that, even if
the owner of the land had the benefit of a zoning "freeze" under G. L.
c. 40A, § 6, sixth par., a zoning board of appeals' grant of a special
permit for a professional office in the residential zone in which the land
was located should have been overturned. [237-238]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 9, 1988.

---

[1]Other residents of the town of Falmouth who joined the suit.
[2]Albert M. Price.

The case was heard by *William H. Carey*, J.

*Edward W. Kirk* for the plaintiffs.

*E. Winn Davis* for the defendants.

FINE, J. The board of appeals of Falmouth granted Albert M. Price a special permit for a professional office in a residential zone. This is an appeal by abutters from a decision reached by a Superior Court judge after a de novo trial, held pursuant to G. L. c. 40A, § 17, affirming the grant of the special permit. The appeal raises the issue of the breadth of one's right to a zoning freeze under G. L. c. 40A, § 6, sixth par., as amended through St. 1986, c. 557, § 54,[3] based upon a planning board's endorsement of a plan "approval not required" (ANR), pursuant to G. L. c. 41, § 81P, as amended by St. 1987, c. 122.[4] We conclude that the statutory right is broad enough to include Price's attempt, however calculated, to invoke the freeze.

---

[3] The sixth paragraph of G. L. c. 40A, § 6, provides: "When a plan referred to in section eighty-one P of chapter forty-one has been submitted to a planning board and written notice of such submission has been given to the city or town clerk, the use of the land shown on such plan shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of such plan while such plan is being processed under the subdivision control law including the time required to pursue or await the determination of an appeal referred to in said section, and for a period of three years from the date of endorsement by the planning board that approval under the subdivision control law is not required, or words of similar import."

[4] General Laws c. 41, § 81P, provides: "Any person wishing to cause to be recorded a plan of land situated in a city or town in which the subdivision control law is in effect, who believes that his plan does not require approval under the subdivision control law, may submit his plan to the planning board of such city or town in the manner prescribed in section eighty-one T, and, if the board finds that the plan does not require such approval, it shall forthwith, without a public hearing, endorse thereon or cause to be endorsed thereon by a person authorized by it the words 'approval under the subdivision control law not required' or words of similar import with appropriate name or names signed thereto, and such endorsement shall be conclusive on all persons. Such endorsement shall not be withheld unless such plan shows a subdivision. . . . If the board fails to act upon a plan submitted under this section or fails to notify the clerk of the city or town and the person submitting the plan of its action within twenty-one days after its submission, it shall be deemed to have determined that approval under the subdivision control law is not required, and it shall forthwith make such endorsement on said plan. . . ."

The essential facts, on the basis of which the judge ruled that Price was entitled to a zoning freeze, are not in dispute. On July 20, 1988, Price applied to the defendant board of appeals for a special permit to use a portion of his property (the "locus"), zoned for residential use, for a dental office. At the time of the application, Falmouth's zoning by-law would have allowed such use in the particular residential zone encompassing the locus, subject to certain restrictions, with a special permit. Price's application was accompanied by a 1949 plan showing the locus with proposed alterations to an existing structure, parking spaces, and other related features. The plan also showed the lots in the surrounding area. A public hearing on the special permit application was held on August 10, 1988. On September 26, 1988, Falmouth first published notice of a public hearing to consider an amendment to the by-law which would make the locus ineligible for the special permit. On October 20, 1988, solely for the purpose of obtaining a zoning freeze, Price submitted a plan to the planning board seeking ANR endorsement, pursuant to G. L. c. 41, § 81P. The plan, not the same as the one submitted with the special permit application, showed two adjacent lots, Price's and another's, with frontage on a public way. It showed the existing boundaries of the two lots and a proposed change to a common boundary line which would have added a small area to Price's lot. On November 8, 1988, the planning board gave the plan an ANR endorsement. The plan was never recorded, however, and the proposed adjustment to the boundary line was never effectuated. In the meantime, on November 2, 1988, the town meeting had voted to change the zoning. The board of appeals voted to grant the special permit on November 16, 1988.

General Laws c. 40A, § 6, sixth par., provides that "the use of the land shown on [a] plan" submitted for ANR endorsement shall be governed by zoning regulations in effect on the date of the submission of the plan to the planning board. The reference to "use" includes use by special permit, such as is involved in this case, as well as use as of right. See *Miller* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 923

(1979). Thus, Price's right to a zoning freeze turns on the validity and effect of the ANR endorsement.

General Laws c. 41, § 81P, authorizes submission of a plan for ANR endorsement by "[a]ny person wishing to cause to be recorded a plan of land . . . who believes that his plan does not require approval under the subdivision control law." There is to be no public hearing, and "[s]uch endorsement shall not be withheld unless such plan shows a subdivision." For a discussion of the history and purpose of § 81P, see *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 602-604 (1980).

The abutters claim that the ANR endorsement was improper. The propriety of such endorsements is subject to judicial review. See *Lee* v. *Board of Appeals of Harwich*, 11 Mass. App. Ct. 148, 151 (1981). Contending that Price's purpose in submitting the plan was to effect a zoning freeze and not to record the plan,[5] the abutters argue that the plan was not within § 81P because it was not one he "wish[ed] to cause to be recorded." Although it is possible that the Legislature intended to afford freeze protection only to ANR-endorsed plans which are recorded in due course, nothing in G. L. c. 40A, § 6, sixth par., requires recording of the plan as a prerequisite for a freeze. Only submission to the planning board and endorsement are referred to in the statute as prerequisites. Moreover, if a purpose such as Price's would disqualify one from receiving ANR endorsement, the planning board would frequently be called upon to consider evidence of the intent of the person submitting a plan. The purpose of § 81P, however, is "to provide a simple method to inform the register that the board was not concerned with the plan," and a planning board's function in deciding whether to give the endorsement is "generally routine [in] nature." *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. at 603-604. The only proper basis under the statute for withholding an endorsement is that the plan shows a subdivision

---

[5]We note the additional circumstances that the owner of the adjacent lot shown on the plan apparently had no intention to record the plan or transfer any land to Price.

as defined in G. L. c. 41, § 81L, and Price's plan clearly did not show a subdivision. Application of a subjective test of intent to determine whether to endorse a plan would be inconsistent with the purpose of § 81P and the provision included within it that no hearing be held. The test is, therefore, an objective one, and objectively the plan submitted, which showed two adjacent lots with adequate frontage, met the requirement for endorsement.

Second, the abutters claim that, because the plan submitted for ANR endorsement is different from the plan submitted with the application for a special permit, the endorsement did not entitle Price to a zoning freeze. It is true that the lot with respect to which Price sought the special permit is different from the lot with the proposed new boundary line shown on the endorsed plan. All the *land* with respect to which the special permit was sought, however, was included within the proposed new lot shown on the endorsed plan, and G. L. c. 40A, § 6, sixth par., provides a zoning freeze for "the use of the *land* shown on [the endorsed] plan" [emphasis added]. The difference in the plans, therefore, did not disqualify Price from benefiting from the freeze.

Third, the abutters argue that the freeze did not apply to the locus because much earlier, in accordance with a 1949 subdivision plan, the lot had been fully developed with a residential structure. Because G. L. c. 40A, § 6, sixth par., refers to freezes of the use of *land*, they argue, it does not apply to developed land. The protection afforded by G. L. c. 40A, § 6, sixth par., and its predecessor statute, however, is broad, certain, and unambiguous. See *Nyquist* v. *Board of Appeals of Acton*, 359 Mass. 462, 465-466 (1971); *Rayco Inv. Corp.* v. *Selectmen of Raynham*, 368 Mass. 385, 388-390 (1975); *Samson* v. *San-Land Dev. Corp.*, 17 Mass. App. Ct. 977, 979 (1984). The purpose of the freeze provision is to protect a developer during the planning stage of a building project. See *McCarthy* v. *Board of Appeals of Ashland*, 354 Mass. 660, 663 (1968); *Nyquist* v. *Board of Appeals of Acton*, 359 Mass. 462, 465 (1971). One may wish to invest in the development of property in accordance with applicable current

zoning regulations whether or not some structure already exists on the property. Price certainly incurred expenses, for example, for the purchase of the property and preparation of his special permit application, in reliance on the zoning regulations existing at the time he applied for the special permit. The presence of a structure on the property at the time of that application should not deprive him of the protection the freeze provision was designed to provide.[6]

The abutters make several additional arguments why, even if Price *had* the benefit of the zoning freeze, the grant of the special permit should have been overturned. One argument concerns the requirement in § 3325(e) of the local zoning by-law that "[p]rofessional offices . . . including any required parking under section 5240 [be] located within 500 feet of a Business or Light Industrial District." The judge found that "all of the area devoted to the offices and all the area required for parking under § 5240 of the zoning by-laws is located within 500 feet" of two separate business districts, but that "the entire lot is not within 500 feet of either district." Either because the word "District" as used in the by-law may reasonably be read to include "Districts," or because the dentist's office and all the required parking for it, and not

---

[6]The abutters also contend that the ninth paragraph of G. L. c. 40A, § 6, makes the freeze provision inapplicable because the locus appears on a 1949 plan, and the plan submitted to the planning board for endorsement, therefore, is an "amended plan." That paragraph provides:

"The record owner of the land shall have the right, at any time, by an instrument duly recorded in the registry of deeds for the district in which the land lies, to waive the provisions of this section, in which case the ordinance or by-law then or thereafter in effect shall apply. The submission of an amended plan or of a further subdivision of all or part of the land shall not constitute such a waiver, nor shall it have the effect of further extending the applicability of the ordinance or by-law that was extended by the original submission, but, if accompanied by the waiver described above, shall have the effect of extending, but only to extent aforesaid, the ordinance or by-law made then applicable by such waiver."

The language in the paragraph has no effect on Price's rights for the reason, if no other, that no earlier zoning freeze relating to the land had ever been in effect.

the entire lot, were required to be within 500 feet of one of the business districts, there was no error. As to the abutters' remaining arguments, the judge's findings are not clearly erroneous, and his rulings of law are sound.[7]

*Judgment affirmed.*

---

[7] The fact that Price's effort to obtain a special permit had almost reached fruition before the zoning by-law was changed makes us comfortable with the result we reach. We recognize, however, that, in general, the right to obtain a three-year zoning freeze by submitting a plan for ANR endorsement is very broad. As we interpret the statute, it has the potential for permitting a developer, or at least a sophisticated one, to frustrate municipal legislative intent by submitting a plan not for any purpose related to subdivision control and not as a preliminary to a conveyance or recording, but solely for the purpose of obtaining a freeze. Any overbreadth in the protection afforded by the statute, however, will have to be cured by the Legislature.