MASSACHUSETTS BROKEN STONE COMPANY & another[1] *vs.*
TOWN OF WESTON & another.[2]

No. 97-P-0860.

Suffolk. May 12, 1998. - November 16, 1998.

Present: ARMSTRONG, PERRETTA, & SPINA, JJ.

Further appellate review granted, 429 Mass. 1104 (1999).

*Zoning,* By-law, Site plan approval. *Jurisdiction,* Land Court. *Practice, Civil,*
Judgment on the pleadings, Failure to raise issue. *Statute,* Construction.
*Subdivision Control,* Plan, Zoning requirements.

In a complaint brought under G. L. c. 240, § 14A, a judge of the Land Court
had subject matter jurisdiction over the plaintiffs' claim seeking a declara-
tion that their property was governed by a 1988 zoning by-law by reason
of a zoning freeze under G. L. c. 40A, § 6. [752-754]
A Land Court judge incorrectly ruled that a zoning freeze created under G. L.
c. 40A, § 6, fifth and seventh pars., for subdivision plans under appeal,
also freezes the zoning for all subsequent plans for the same locus, that is,
that the freeze attaches to the land independently of the subdivision plan
[755-758]; consequently, the judge erred in ruling that a freeze triggered
by a 1989 subdivision plan applied to an application for site plan review
for the same locus, but not involving a subdivision, filed in 1995 after the
applicable zoning by-laws had changed [758-759].

CIVIL ACTION commenced in the Land Court Department on
May 29, 1996.

The case was heard by *Peter M. Lauriat,* J., sitting under
statutory authority, on a motion for judgment on the pleadings.

*Judith C. Cutler* for the defendants.

*Franklin C. Huntington, IV (John J. Griffin, Jr.,* with him) for
the plaintiffs.

SPINA, J. The town of Weston (town) and the planning board
of Weston (planning board) (collectively, the defendants) appeal
from a judgment of the Land Court which declared (count I of
the complaint) that a zoning freeze, triggered by Massachusetts

---

[1]AMA Funding Corporation.
[2]The planning board of Weston.

Broken Stone Company's (Broken Stone's) filing of a subdivision plan, also applied to an entirely different project (not a subdivision) later proposed by AMA Funding Corporation (AMA).[3] We reverse.

Broken Stone is the owner of a seventy-four acre parcel of land on Route 20 near the intersection of Route 128 in Weston (site). On January 7, 1986, Broken Stone filed a preliminary subdivision plan proposing to develop the site as a combined life care facility and office complex (1986 plan). The site was located variously in the town's "Business," "Industrial," and "Single Residence C" zoning districts.[4] The filing of that plan triggered a zoning freeze pursuant to G. L. c. 40A, § 6, fifth par.[5] The preliminary subdivision plan was disapproved by the planning board.[6] Broken Stone filed a definitive subdivision plan within seven months of the filing of the preliminary plan. On October 6, 1986, the planning board approved the definitive subdivision plan.[7]

On April 6, 1988, Broken Stone and the town entered into a

---

[3]AMA had an agreement to purchase the site from Broken Stone pursuant to certain conditions.

[4]Approximately ninety-eight per cent of Weston is zoned for residential use and two per cent is zoned for nonresidential uses.

[5]General Laws c. 40A, § 6, fifth par., as amended by St. 1982, c. 185, provides, in pertinent part, as follows:

> "If a definitive plan, or a preliminary plan followed within seven months by a definitive plan, is submitted to a planning board for approval under the subdivision control law, and written notice of such submission has been given to the city or town clerk before the effective date of ordinance or by-law, the land shown on such plan shall be governed by the applicable provisions of the zoning ordinance or by-law, if any, in effect at the time of the first such submission while such plan or plans are being processed under the subdivision control law, and, if such definitive plan or an amendment thereof is finally approved, for eight years from the date of the endorsement of such approval . . . ."

[6]On May 14, 1986, Broken Stone filed suit in the Land Court seeking, inter alia, to invalidate the residential classification of two parcels of land on the site. On May 21, 1987, the Land Court concluded that the classification was arbitrary, unreasonable, and invalid because the parcels could not practicably be developed for residential use.

[7]The approval was subject to three conditions. Broken Stone appealed the imposition of the condition which required extension of the interior roadway to the northerly and westerly property lines, even though no public way abut-

settlement agreement resolving their pending lawsuits, pursuant to which the town agreed, inter alia, to reclassify the entire site as a "Business B" zoning district. In return, Broken Stone agreed, inter alia, to limit development of the site to less than one-half (359,000 square feet) of the density permitted by the zoning by-law. On May 9, 1988, the town approved amendments to the zoning by-law consistent with the settlement agreement (1988 zoning by-law).

On April 28, 1989, Broken Stone filed a preliminary subdivision plan for a five-lot office complex on the site (1989 plan). The proposed subdivision was consistent with the terms of the settlement agreement and the 1988 zoning by-law.[8] The filing of that preliminary subdivision plan triggered a zoning freeze pursuant to G. L. c. 40A, § 6, fifth par.

On May 9, 1989, the town approved substantial amendments to the 1988 zoning by-law. Pursuant to these amendments, the only unrestricted as-of-right uses in a "Business District" were open spaces and public parks. All other substantive uses over 1,000 square feet required a special permit from the zoning board and site plan approval from the planning board.

On June 6, 1989, Broken Stone's preliminary subdivision plan was disapproved by the planning board. Broken Stone timely submitted a definitive subdivision plan for the site which also was disapproved by the planning board. On March 5, 1990, Broken Stone timely appealed the planning board's disapproval of its definitive plan to the Land Court.[9] The filing of that appeal extended the existing zoning freeze, pursuant to G. L. c. 40A, § 6, seventh par.[10]

---

ted the site at those locations. That appeal was ultimately dismissed in September, 1996, when, in response to the defendants' motion that the Land Court dismiss the appeal for lack of prosecution, Broken Stone agreed to its dismissal.

[8]Pursuant to the 1988 zoning by-law, offices and office buildings were permitted in a "Business District," provided that a special permit was first issued by the zoning board of appeals of Weston (zoning board) following a site plan review.

[9]See *Massachusetts Broken Stone Co.* v. *Planning Bd. of Weston, ante* 738 (1998).

[10]General Laws c. 40A, § 6, seventh par., as inserted by St. 1975, c. 808, § 3, provides as follows:

"Disapproval of a plan shall not serve to terminate any rights which shall have accrued under the provisions of this section, provided an ap-

For the next several years, Broken Stone put its plans to develop the site on hold because of a widespread downturn in the real estate market in Massachusetts. In August, 1994, Broken Stone and AMA (collectively, the plaintiffs) held informal meetings with the planning board to discuss proposals for developing the site. On June 30, 1995, AMA submitted an application for site plan review to the zoning board in connection with the construction of a single 359,000 square foot office building on the site (1995 plan). In contrast to the 1986 and 1989 plans, the 1995 plan did not propose any subdivision of the site. The application was filed pursuant to Section X of the 1988 zoning by-law, as a prerequisite to applying for the necessary special permit. The zoning board referred the application to the planning board for review and recommendation.

On August 10, 1995, the planning board notified AMA of the board's position that the site was governed by the provisions of the current (1989) zoning by-law and that AMA's application was subject to the site plan approval process enacted on May 9, 1989, when the 1988 zoning by-law was substantially amended.[11] As such, the planning board processed AMA's application as one for "site plan approval" under Section XI of the current zoning by-law, rather than as one for "site plan review" under Section X of the 1988 zoning by-law. Numerous public hearings on the proposed site plan were held. By letter dated May 10, 1996, the planning board recommended that the zoning board deny AMA's application on the grounds that the provisions of the 1988 zoning by-law, pursuant to which AMA had sought site plan review, were no longer in effect and that, pursuant to the provisions of the 1989 amendments, the zoning board had no jurisdiction to act upon the proposed site plan. The planning board set forth substantive comments and recom-

peal from the decision disapproving said plan is made under applicable provisions of the subdivision control law. Such appeal shall stay, pending an order or decree of a court of final jurisdiction, the applicability to land shown on said plan of the provisions of any zoning ordinance or by-law which became effective after the date of submission of the plan first submitted."

[11]The determination as to which version of the zoning by-law is applicable to the site has a significant impact on the nature and scope of the planning board's review of AMA's proposed development project.

mendations in the event that the zoning board determined that it did, in fact, have jurisdiction over AMA's application.[12]

On May 29, 1996, the plaintiffs filed a four-count complaint with the Land Court. In count I of their complaint, which is at issue here, the plaintiffs sought a declaration under G. L. c. 240, § 14A, that the 1988 zoning by-law was applicable to the site. In the alternative, the plaintiffs sought a declaration that the zoning by-law which was in place on May 21, 1987, when the Land Court invalidated the residential classification of a portion of the site, was applicable. The plaintiffs then filed a motion for judgment on the pleadings as to count I of their complaint. They asserted, inter alia, that the planning board had admitted all facts necessary for the Land Court to conclude, as a matter of law, that a freeze of the 1988 zoning by-law remained in effect with respect to the site.

Following a hearing, the Land Court judge allowed the plaintiffs' motion for judgment on the pleadings as to count I of their complaint. He found, inter alia, that, pursuant to G. L. c. 40A, § 6, a freeze of the 1988 zoning by-law was triggered when Broken Stone filed its preliminary subdivision plan on April 28, 1989, and remained in effect while Broken Stone's appeal of the denial of its definitive subdivision plan was pending.[13] He then concluded that the 1988 zoning by-law applied to the site and governed AMA's application for site plan review, which had been submitted to the zoning board on June 30, 1995.[14] The defendants brought the present appeal.

1. *Jurisdiction of the Land Court.* The defendants first argue that the judge erred in allowing the plaintiffs' motion for judgment on the pleadings as to count I of their complaint because the Land Court did not have subject matter jurisdiction to grant the requested relief. General Laws c. 240, § 14A, as amended by St. 1975, c. 808, § 5, provides, in pertinent part, as follows:

"The owner of a freehold estate in possession in land may bring a petition in the land court against a city or

[12]As far as can be determined from the record, the zoning board issued no decision on AMA's application.

[13]That appeal also came before this court. See note 9, *supra.*

[14]The motion judge correctly rejected the plaintiffs' argument that the defendants had made a judicial admission that the 1988 zoning by-law applied to the 1995 plan. The defendants have consistently taken the position that the 1989 by-law applied.

town wherein such land is situated . . . for determination as to the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of chapter forty A . . . which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land . . . or for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise as set forth in such petition."

The defendants assert that the plaintiffs' request for relief, pursuant to G. L. c. 240, § 14A, was not based upon a claim that any zoning by-law was invalid or ambiguous. Rather, the plaintiffs sought an interpretation of G. L. c. 40A, § 6, to determine *its* effect upon the use and development of the site. The defendants argue that the plaintiffs are not entitled to a declaratory judgment as to the applicability of a zoning freeze under G. L. c. 40A, § 6, because the interpretation of a statute is outside the scope of G. L. c. 240, § 14A. Therefore, the defendants contend, the Land Court lacked subject matter jurisdiction to grant the relief requested in count I of the plaintiffs' complaint.

General Laws c. 240, § 14A, is a remedial statute and allows landowners "to petition for a decision concerning the validity or invalidity of any zoning restriction applicable to [their] land." *Sturges* v. *Chilmark*, 380 Mass. 246, 249 (1980). The language of G. L. c. 240, § 14A, also allows landowners to petition for a decision as to the extent to which a zoning enactment affects the landowners' proposed use of their property. *Banquer Realty Co.* v. *Acting Bldg. Commr. of Boston*, 389 Mass. 565, 570-571 (1983). The statute is one which is to be broadly construed. *Harrison* v. *Braintree*, 355 Mass. 651, 654 (1969). However, where a landowner seeks a determination regarding matters other than those relating to the validity or application of a zoning by-law, such as the effect of a special permit, the Land Court lacks subject matter jurisdiction under G. L. c. 240, § 14A, to consider the claim. *Whitinsville Retirement Soc.* v. *Northbridge*, 394 Mass. 757 (1985).

In count I of their complaint, the plaintiffs sought a declaration that the site was governed by the provisions of the 1988 zoning by-law on grounds that the filing of their preliminary

subdivision plan on April 28, 1989, triggered a zoning freeze under G. L. c. 40A, § 6, and the filing of an appeal from the denial of their definitive subdivision plan extended the zoning freeze. The plaintiffs clearly sought a determination of the extent to which the 1988 zoning by-law affected the "proposed use, enjoyment, improvement or development" of the site. Compare *Sturges* v. *Chilmark*, 380 Mass. at 260, where, in reviewing a decision of the Land Court in an action brought pursuant to c. 240, § 14A, the court construed the application of G. L. c. 41, § 81FF, and G. L. c. 40A, § 6, to petitioner's property; *Whitinsville Retirement Soc.* v. *Northbridge*, 394 Mass. at 759-761, where the court construed the applicability of G. L. c. 40A, § 3, to the plaintiff's proposed use of its land.[15]

We find it unremarkable that the courts have construed the application of the zoning statute (c. 40A) and the subdivision control law (c. 41, §§ 81K et seq.) to petitioners' property in actions brought pursuant to c. 240, § 14A. Where the zoning and subdivision statutes determine how, or whether, a particular zoning by-law affects petitioners' property, such a determination clearly comes within the purview of c. 240, § 14A, and also serves the interests of judicial economy. Accordingly, we conclude that count I of the plaintiffs' complaint fits within the plain meaning of G. L. c. 240, § 14A, and that the Land Court had subject matter jurisdiction to consider the applicability of the 1988 zoning by-law to the site.

2. *The zoning freeze.* The defendants argue that the plaintiffs failed to satisfy all the essential requirements for perfecting a zoning freeze pursuant to G. L. c. 40A, § 6, fifth par. They assert that the plaintiffs did not present any evidence that they had given timely written notice of the submission of their preliminary and definitive subdivision plans to the Weston town clerk. The defendants contend that, absent such evidence, the motion judge could not make a conclusive determination as to whether a zoning freeze was ever perfected.

The judge's findings and conclusions make no reference to this claim by the defendants, and nothing in the record indicates

---

[15]In *Whitinsville*, as in *Sturges*, *supra*, the plaintiff's action was brought pursuant to c. 240, § 14A. There was apparently no question raised as to the Land Court's jurisdiction to decide the c. 40A, § 3, issue, whereas the Supreme Judicial Court explicitly held that the Land Court had no jurisdiction to consider the plaintiff's claim that it was exempt from the defendant's zoning by-law by virtue of a special permit issued some years earlier.

that it was raised below. An issue which has not been raised before the trial court cannot be argued for the first time on appeal. *M. H. Gordon & Son* v. *Alcoholic Bevs. Control Commn.*, 386 Mass. 64, 67 (1982). *Spence* v. *O'Brien*, 15 Mass. App. Ct. 489, 499 (1983). Therefore, we will not consider the defendants' claim that the plaintiffs failed to show that they had given timely written notice of the submission of their subdivision plans to the Weston town clerk, in accordance with G. L. c. 40A, § 6, fifth par.

The defendants next argue that the plaintiffs did not establish, as a matter of law, that a zoning freeze had attached to the site pursuant to G. L. c. 40A, § 6, fifth par., nor that it had remained in effect pursuant to G. L. c. 40A, § 6, seventh par., such that development of the site pursuant to the 1995 plan, which did not include any subdivision, would be governed by the provisions of the 1988 zoning by-law, pending the disposition of Broken Stone's appeal from the denial of its 1989 subdivision plan. The defendants assert that the judge erred in concluding that *Heritage Park Dev. Corp.* v. *Southbridge*, 424 Mass. 71 (1997), was controlling with respect to count I of the complaint.

The judge concluded, essentially, that the stay created by § 6, fifth and seventh pars., for subdivision plans under appeal, also freezes the zoning for all subsequent plans for the same locus, including those not involving subdivisions, until the subdivision appeal process is completed. Put another way, he concluded that the stay attaches to the land independently of the subdivision plan. In reaching this conclusion, he noted that the purpose of the statutory zoning freeze is "to protect landowners from 'the practice in some communities of adopting onerous amendments to the zoning by-law after submission of a preliminary plan which is opposed by segments within the community.' " *Heritage Park Dev. Corp.* v. *Southbridge*, 424 Mass. at 76, quoting from 1972 House Doc. No. 5009, at 38, Report of the Department of Community Affairs Relative to Proposed Changes and Additions to the Zoning Enabling Act. However, the court in *Heritage Park* further observed that this "freeze provides landowners with protection from amendments to zoning laws that would *unpredictably and unfairly* burden the development of their land" (emphasis added). 424 Mass. at 76. AMA experienced nothing unpredictable or unfair when the planning board applied the 1989 zoning by-law to its 1995 application for site plan review. As AMA's 1995 site plan bore no

relation to Broken Stone's 1989 subdivision plans, AMA could have no reasonable expectation that the 1988 zoning by-law would apply to its site plan. The defendants did not offend the purpose of the statute by applying the 1989 by-law.

The judge also cited *Heritage Park* for the proposition that "developers can invoke a zoning freeze with inconsistent subdivision filings, or with plans filed with no intent other than to invoke the freeze. See, e.g., *Long* v. *Board of Appeals of Falmouth*, 32 Mass. App. Ct. 232, 233 (1992); *Patelle* v. *Zoning Bd. of Woburn*, [20 Mass. App. Ct. 279, 284 (1985)]." *Heritage Park, supra* at 76. However, there the court was merely noting the "broad protection" afforded developers generally by § 6. *Heritage Park* does not hold that a zoning freeze under § 6, fifth and seventh pars., attaches to the *land* so as to allow a developer to do anything permitted under the "frozen" by-law during the stay. The narrow holding of *Heritage Park* was that the eight-year zoning freeze under § 6, fifth par., arising from approval of a definitive subdivision plan, was not terminated by operation of an automatic rescission provision in a performance covenant executed by the developer. *Id.* at 74-75.

The plaintiffs argue that § 6, fifth and seventh pars., should be construed as creating a freeze which attaches to the land, consistent with the gloss given the similarly worded freeze created by § 6, sixth par.[16] See *Long* v. *Board of Appeals of Falmouth*, 32 Mass. App. Ct. at 236.

The argument has no merit. The various freezes created by § 6 are independent of one another. Compare *Nyquist* v. *Board of Appeals of Acton*, 359 Mass. 462, 464-465 (1971). The freeze created by § 6, sixth par., relates only to the "use of the land" on a plan not involving a subdivision, and lasts only three years following approval. The freeze created by § 6, fifth and seventh pars., applicable to a plan involving a subdivision, is much

---

[16]General Laws c. 40A, § 6, sixth par., as amended by St. 1986, c. 557, § 54, provides in pertinent part:

"When a plan referred to in section eighty-one P of chapter forty-one has been submitted to a planning board . . . the use of the land shown on such plan shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of such plan while such plan is being processed . . . and for a period of three years from the date of endorsement . . . ."

broader, involving all zoning provisions applicable to the land shown on the plan during the approval processes, and for eight years following approval of a definitive plan. See *Bellows Farms, Inc.* v. *Building Inspector of Acton*, 364 Mass. 253, 259-260 (1973) (interpreting parallel provisions of the former G. L. c. 40A, § 7A, the predecessor to the current § 6, fifth, sixth, and seventh pars.). *Long* v. *Board of Appeals of Falmouth, supra*, is not to the contrary. There the court merely held that the freeze created by § 6, sixth par., is not defeated by development of only a portion of the land shown on a plan endorsed under G. L. c. 41, § 81P. The approved plan did nothing more than outline the land to be protected by the freeze, and identified a general development objective. The freeze created by § 6, fifth and seventh pars., is intended to protect a far more substantial investment in a specific development effort.

Our courts have consistently held that the "freeze" created by § 6, fifth and seventh pars., may be utilized to advance a definitive subdivision plan through the subdivision approval process, and to preserve an approved subdivision. We have been directed to no case where the use of those statutory provisions has been approved for purposes outside that process, as the plaintiffs urge us to do with respect to AMA's 1995 plan. In *Heritage Park, supra* at 74-75, the court held that the eight-year zoning freeze inured to the benefit of the developer "for its . . . *subdivision*" (emphasis added). In *Doliner* v. *Planning Bd. of Millis*, 349 Mass. 691, 696 n.6 (1965), the court suggested that the freeze applies to the land *and* the subdivision plan inseparably, protecting against the effect of intervening zoning amendments during the subdivision approval process. In *Arenstam* v. *Planning Bd. of Tyngsborough*, 29 Mass. App. Ct. 314, 317 (1990), we held that an amended definitive plan, which had been submitted more than seven months after a preliminary plan, would not benefit from the zoning freeze triggered by the preliminary plan. See *Paul Livoli, Inc.* v. *Planning Bd. of Marlborough*, 347 Mass. 330, 335 (1964), where the court indicated that a definitive subdivision plan filed within seven months of a preliminary plan must have "evolved" from the preliminary plan for the freeze to be extended. The common thread running through these cases is that, under the freeze provisions of § 6, fifth and seventh pars., it is the subdivision plan that is protected by the zoning freeze, and only incidentally, the land. The freeze attaches to existing zoning provisions which are "applicable" to

the plan, and preserves them throughout the subdivision approval process, plus an additional eight years if the subdivision plan is approved.[17,18] AMA's 1995 application for site plan review, unrelated as it was to Broken Stone's 1989 definitive subdivision plan, was not entitled to the protection of any zoning "freeze" under § 6, much less a greater protection than that afforded the proponent of the amended definitive plan in *Arenstam* v. *Planning Bd. of Tyngsborough, supra.* See *Wolk* v. *Planning Bd. of Stoughton,* 4 Mass. App. Ct. 812 (1976).

We conclude that the judge erred in determining that the freeze triggered by the 1989 subdivision plan applied to the processing of the 1995 plan. The plaintiffs' motion for judgment on the pleadings with respect to count I of their complaint should not have been allowed. Accordingly, the judgment of the Land Court is reversed, and a declaratory judgment is to enter on count I that AMA's application for site plan review was not

---

[17]The defendants argue that the plaintiffs can obtain the broad "freeze" rights they seek, but only under the eight-year freeze that arises upon approval of a definitive subdivision plan, which Broken Stone has not yet received (but see our decision in *Massachusetts Broken Stone Co.* v. *Planning Bd. of Weston, ante* 738 [1998]). They rely on *Heritage Park,* 424 Mass. at 75, for the proposition that § 6, fifth par., creates vested rights under the eight-year freeze that are more expansive than the other freeze provisions of § 6, fifth and seventh pars. There is nothing in *Heritage Park* to support this contention, and the statute speaks only of extensions of the initial freeze. Thus, our decision in *Massachusetts Broken Stone Co.* v. *Planning Bd. of Weston, supra,* ordering the planning board to endorse Broken Stone's 1989 subdivision plan, will not have the effect of establishing a zoning freeze for AMA's 1995 plan, which bore no relation to the 1989 subdivision plan.

[18]The plaintiffs argue in the alternative that the approval of Broken Stone's definitive subdivision plan in October, 1986, triggered an eight-year zoning freeze and that the running of this eight-year period was stayed until Broken Stone's appeal from one of the conditions imposed by the planning board was dismissed in 1996. In view of the result we have reached, this argument has no merit, as AMA's 1995 plan, which the plaintiffs argue is protected by the freeze, bears no relation whatsoever to Broken Stone's 1986 plan.

Nevertheless, addressing the plaintiffs' argument, pursuant to G. L. c. 40A, § 6, fifth par., the eight-year zoning freeze arose on the date it was approved and expired in October, 1994. See *Heritage Park, supra* at 74-75. Broken Stone's appeal from one of the planning board's conditions did not stay the running of the eight-year zoning freeze, as G. L. c. 40A, § 6, seventh par., provides for a stay only where a landowner has appealed from the *disapproval* of a definitive subdivision plan, and Broken Stone's first definitive subdivision plan was not disapproved. AMA's 1995 application for site plan approval was filed after the eight-year freeze lapsed. Accordingly, the plaintiffs' argument also fails for this reason.

entitled to the benefits of the stay under G. L. c. 40A, § 6, fifth and seventh pars.

*So ordered.*