Giles, J.
Introduction
Pursuant to Section 17 of Chapter 40A of the General Laws, the plaintiff, Barbara DiCarlo (“plaintiff’), commenced this action against the defendants, the Hopkinton Zoning Board of Appeals (“ZBA”) and the Town of Hopkinton (“Town”) (collectively, “defendants”), challenging the ZBA’s denial of a building permit for Lots 205, 206, and 207[1] and seeking that the statutory zoning freeze be applied to that land. This matter is before the court on the plaintiffs and the defendants’ cross motions for summary judgment with respect to these two issues. For the reasons set forth below, the defendants’ motion for summary judgment is ALLOWED; and the plaintiffs motion for summary judgment is DENIED.
Background
The undisputed facts as revealed by the summary judgment record, viewed in the light most favorable to the non-moving party,[2] are as follows.
On May 21, 1993, the Town’s Planning Board endorsed the subdivision plan entitled “Forestside Estates III Definitive Plan of Land in Hopkinton, Massachusetts,” which is recorded with the Middlesex South District Registry of Deeds as Plan 320 of 1993 in Book 23222, Page 215 (“Subdivision Plan”). As part of the approval process, three public hearings had been held in March 1993. At these hearings, the Planning Board requested that, prior to the subdivision of the land to the north and south of Elizabeth Road into lots using the road as frontage, the plaintiff[3] provide perimeter survey information of those lots on plans submitted. The Subdivision Plan created parcels 51, 52, and 53, as well as the parcel shown as “N/F DiCarlo” on the north side of Elizabeth Road. The cover sheet of the Subdivision Plan showed the location of those parcels in relation to additional land owned by other parties.
At the time the Planning Board endorsed the Subdivision Plan, Hopkinton’s Zoning By-laws authorized lots of 40,000 square feet if served by Town water. On May 3, 1994, the Town voted to amend the Zoning By-laws by increasing the minimum lot size to 60,000 square feet, whether or not the land was served by municipal water.
On April 25, 1994, the plaintiff submitted to the Planning Board the plan entitled “Plan of Land in Hopkinton Massachusetts,” dated April 14, 1994, which showed Lots 200 through 209 on Elizabeth Road (“8 IP Plan”). Pursuant to G.L.c. 41, §81P, the Planning Board endorsed the 8 IP Plan as “approval not required.” The 8 IP Plan was recorded with the Middlesex South District Registry of Deeds on May 4, 1994, as Plan No. 399 of 1994 in Book 24510, Page 263. The lots on the 81P Plan each contained more than 40,000 square feet, but less than 60,000 square feet.[4]
On June 5, 2000, the plaintiff filed an application for a building permit for the construction of a single-family residence on one of the lots on the 81P Plan; the lot contained 42,710 square feet. The Building Department issued the permit on June 12, 2000. On June 29, 2000, the Planning Board appealed the Building Inspector’s order of decision to the ZBA, alleging that the plaintiffs land was not entitled to the eight-year zoning freeze authorized by the statute. The ZBA held public hearings in July and August 2000 and issued its decision on October 23, 2000, revoking the building permit for the lots at issue.
Count II[5] of the plaintiffs complaint seeks an order that the zoning freeze provided by G.L.c. 40A, §6, be applied to Lots 205, 206, and 207, thereby protecting the land from the increased area requirements the Town adopted in May 1994.
*296 Discussion
Summary judgment is granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
A. Broad Application of Zoning Freeze Protection
The fifth paragraph of Section 6 of Chapter 40A establishes an eight-year zoning freeze for land shown on a definitive plan that was submitted to a planning board for approval under the subdivision control law.[6] The purpose of this zoning freeze is to “protect landowners from ‘the practice in some communities of adopting onerous amendments to the zoning by-law after submission of a preliminary plan which is opposed by segments within the community.’ ” Heritage Park Dev. Corp. v. Town of Southbridge, 424 Mass. 71, 76 (1997). The zoning freeze period is also “designed to protect a developer during the planning stage of a building project.” Falcone v. Zoning Bd., of Appeals of Brockton, 7 Mass.App.Ct. 710, 712 (1979).
Thus, the protection offered by this freeze is “broad” as it seeks to prevent unpredictable changes in zoning by-laws from unfairly burdening development of land. Heritage Park Dev. Corp., 424 Mass. at 76. Indeed, the Supreme Judicial Court has “cited with approval Appeals Court decisions holding that developers can invoke a zoning freeze with inconsistent subdivision filings or with plans filed with no intent other than to invoke the freeze.” Massachusetts Broken Stone Co. v. Town of Weston, 430 Mass. 637, 641-42 (2000). However, the applicability of the zoning freeze is not absolute. See Hanna v. Planning Bd. of Charlton, Civil No. 941531C *2 (Worcester Super. Ct. Sept. 26, 1995) (4 Mass. L. Rptr. 389). Limits must be employed to avoid a “potentially uncontrollable enlargement of the eight-year period.” Id. at *2 n.5.
In the case at bar, the plaintiff is seeking that the zoning freeze be applied to Lots 205, 206, and 207 so that those lots can benefit from the pre-1994 zoning by-laws requiring a minimum square footage of 40,000, rather than the current 60,000 square feet requirement. The land at issue, however, was not described by metes and bounds on the Subdivision Plan that was approved prior to the change in minimum area requirements.
This issue is one of first impression for the court. As discussed below, the land at issue was not “shown on the plan,” as required by the statute. See G.L.c. 40A, §6. The plaintiff had filed a plan under Section 81P of Chapter 41 that contained Lots 205, 206, and 207, thereby affording the plaintiff a three-year zoning freeze under the sixth paragraph of Section 6 of Chapter 40A.[7] The plaintiff could have filed a plan “with no intent other than to invoke [this three-year) freeze.” See Broken Stone, 430 Mass. at 642. The permissive nature of the zoning freeze, however, does not extend to the issue before the court. In this case, there would be a “potentially uncontrollable enlargement” of the three-year period by a finding that the mere existence of the land in question on the Subdivision Plan rendered it sufficiently described to make it eligible for the eight-year zoning requirement. See Hanna, Civil No. 941531C *2 n.5.
B. Land Shown on the Subdivision Plan 1. Statutes
The plaintiffs claim for relief rests on an interpretation of paragraph 5 of G.L.c. 40A, §6. Specifically at issue here is the meaning of the phrase, “land shown on the plan . . .” G.L.c. 40A, §6. If the question is resolved in the plaintiffs favor, with the phrase applied to any land on the Subdivision Plan, not just that land before the Planning Board for consideration, then Lots 205, 206, and 207 would be eligible for the eight-year zoning freeze. See id. A court, however, “cannot interpret a statute so as to avoid injustice or hardship if its language is clear and unambiguous and requires a different construction.” Pierce v. Christmas Tree Shops, Inc., 429 Mass. 91, 93 (1999); see Pielech v. Massasoit Greyhound, Inc., 423 Mass. 534, 539 (1996). Moreover, “a statute must be construed ‘according to the intent of the Legislature . . .’ ” Acting Superintendent of Bournewood Hosp. v. Lynda Baker, 431 Mass. 101, 104 (2000); Massachusetts Comm’n Against Discrimination v. Liberty Mut. Ins. Co., 371 Mass. 186, 190 (1976).
As discussed above, the purpose of the zoning freeze is to protect developers and landowners; but this protection is not absolute, and limits must be employed to avoid a “potentially uncontrollable enlargement of the eight-year period.” Heritage Park Dev. Corp., 424 Mass. at 76; Falcone, 7 Mass.App.Ct. at 712; Hanna, Civil No. 941531C *2 n.5. In the instant action, the plaintiff essentially is seeking to extend the expired three-year period to which Lots 205, 206, and 207 were entitled because of their placement on the 8IP Plan. See G.L.c. 40A, §6. These facts, too, must be weighed in interpreting the statute because, while *297 considering the Legislature’s intent, the meaning of a statutory phrase also must be “ascertained from all its words and . . . considered in connection with the cause of its enactment, the mischief or imperfection to be remedied, and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.” Acting Superintendent of Bournewood Hosp., 431 Mass. at 104; Massachusetts Comm’n Against Discrimination, 371 Mass. at 190. Accordingly, the court concludes that the phrase “land shown on the plan” applies only to that Subdivision Plan land that was before the Planning Board for subdivision approval. See G.L.c. 40A, §6.
“While we should interpret statutes to give effect to the Legislature’s intent . . . and should construe related statutes to ‘constitute an harmonious whole consistent with the legislative purpose,’... we cannot read into a statute a provision which simply is not there.” Boulter-Hedley v. Boulter, 429 Mass. 808, 811 (1999), quoting Registrar of Motor Vehicles v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 382 Mass. 580, 585 (1981). Furthermore, “astatute should be read as a whole to produce an internal consistency.” Acting Superintendent of Bournewood Hosp., 431 Mass. at 104. In this case, the said interpretation of the phrase, “land shown on the plan,” corresponds with the applicable sections of the Subdivision Control Laws, set forth in Chapter 41 of the General Laws of Massachusetts. See G.L.c. 41, §§81K-81GG; Acting Superintendent of Bournewood Hosp., 431 Mass. at 104; Boulter-Hedley, 429 Mass. at 811. In Section 81L, the term “Subdivision” is defined as “the division of a tract of land into two or more lots .. .” G.L.c. 41, §81L. The plain meaning of the word “land” in this context is the properly that is divided to form the subdivision. See G.L.c. 41, §81L. Lots 205, 206, and 207 were neither delineated on the Subdivision Plan nor before the Planning Board for subdivision approval. Therefore, a determination that the “land shown on the plan” includes the land that later became Lots 205, 206, and 207 would result in an inconsistent interpretation of the statute as a whole. See G.L.c. 40A, §6; G.L.c. 41, §81L; Acting Superintendent of Bournewood Hosp., 431 Mass. at 104; Boulter-Hedley, 429 Mass. at 811.
Similarly, Section 810 states that, “No person shall make a subdivision of any land . .. unless he has first submitted to the planning board ... for its approval a plan of such proposed subdivision, showing the lots into which such land is to be divided . . .” G.L.c. 41, §810. The realty out of which Lots 205, 206, and 207 were later divided appeared on the Subdivision Plan, but not as “lots into which such land is to be divided . ..” See G.L.c. 41, §810. This land was not presented to the Planning Board in the Subdivision Plan for consideration as a subdivision but was there merely as adjacent property. Accordingly, an inconsistent interpretation of the statute would result from a conclusion that this area out of which Lots 205, 206, and 207 was “land shown on the plan” such that the plaintiff could get the benefit of the eight-year zoning freeze. See G.L.c. 40A, §6; G.L.c. 41, §810; Acting Superintendent of Bournewood Hosp., 431 Mass. at 104; Boulter-Hedley, 429 Mass. at 811.
2. Case law
As previously discussed, this case is one of first impression for the court, since earlier cases addressing the applicability of zoning freezes concern the same, undifferentiated land. See Broken Stone, 430 Mass. at 638-39; Heritage Park Dev. Corp., 424 Mass. at 72-74; Long v. Board of Appeals of Falmouth, 32 Mass.App.Ct. 232, 234 (1992). Here, Lots 205, 206, and 207 are not eligible for a zoning freeze that would apply the pre-1994 zoning by-laws because they were not sufficiently described on the 1993 Subdivision Plan that resulted in the creation of Lots 51, 52, and 53.
a. Massachusetts Broken Stone Co. v. Town of Weston
In Broken Stone, the plaintiff filed a preliminary subdivision plan in 1989, triggering the zoning freeze under Section 6 of Chapter 40A. 430 Mass. at 638. The planning board disapproved the plan, and a series of appeals extended the zoning freeze. Id. at 638-39. In 1995, the plaintiff submitted a new site plan application to the zoning board of appeals; rather than a subdivision plan, this proposal was for an office building. Id. at 639. The defendant found that the proposed office building was different from the 1989 subdivision plan and, therefore, was not eligible for the zoning freeze. Id. In the case at bar, the Subdivision Plan and the 8 IP Plan were submitted for consideration for different lots of land: the former for Lots 51, 52, and 53, and the latter for Lots 205, 206, and 207. Thus, Broken Stone is distinguishable on its facts. See 430 Mass. at 638-39.
At issue before the Supreme Judicial Court in Broken Stone was the meaning of the statutory phrase, “land shown on the plan.” 430 Mass. at 640; see G.L.c. 40A, §6. The court rejected the defendant’s argument that the zoning freeze applied only to subdivision plans because that conclusion would be inconsistent with both “the plain language of the statute . . . [and] its legislative purpose." Broken Stone, 430 Mass. at 640. Consequently, the court focused on the land with which each plan was concerned, not on the proposed uses for the land. See id. at 642. The land was identical, so the zoning freeze triggered by the initial 1989 filing also applied to the later filing. Id. In this case, however, the lots of land to which the two plans referred were different. As such, the zoning freeze triggered by the plaintiffs 1993 Subdivision Plan filing does not apply to Lots 205, 206, and 207.
b. Heritage Park Dev. Corp. v. Town of Southbridge[8]
In Heritage Park Dev. Corp., the plaintiff received approval of its definitive plan in 1989. 424 Mass. at *298 72. This approval was contingent upon the plaintiffs completion of the groundwork by a certain date in 1991; if the condition were not met, then the planning board would rescind its approval. Id. The plaintiff did not meet the condition; as a result, the planning board’s approval was automatically rescinded. Id. at 73, 74. In 1993, the planning board did not give the plaintiff permission to refile a subdivision plan with the benefit of the zoning freeze triggered in 1989. Id. at 73-74.
Unlike in this case, in Heritage Park Dev. Corp. the land at issue in 1989 and in 1993 was identical. See id. at 72, 73. The court concluded that the zoning freeze triggered in 1989 remained in effect despite the automatic rescission of the planning board’s approval. Id. at 74-75. The court reasoned that “(o)nce a definitive subdivision plan is ‘finally approved,’ . . . the eight-year zoning freeze is secure . . . Whatever subdivision control the board may exercise cannot operate to deprive [the plaintiff] of the zoning protection it secured in 1989." Id. at 75.
In the instant action, the land in the plaintiffs 1993 Subdivision Plan benefits from the protection of the zoning freeze only to the extent that it was before the Planr ing Board for approval. See Heritage Park Dev. Corp., 424 Mass. at 74-75. The Subdivision Plan pertained to Lots 51, 52, and 53. The consideration of the creation of those lots by the Planning Board triggered the eight-year zoning freeze. See Heritage Park Dev. Corp., 424 Mass. at 74-75. The plaintiff did not seek to create Lots 205, 206, and 207 with the Subdivision Plan; instead, she submitted the 8IP Plan in 1994 to create those lots. The land into which Lots 205, 206, and 207 were made was an extraneous part of the Subdivision Plan, included only as a matter of completeness, similar to land owned by adjacent landowners.[9] Hence, under the court’s implied reasoning in Heritage Park Dev. Corp., the plaintiff is not entitled to the zoning freeze, as the Subdivision Plan triggered it with respect to Lots 51, 52, and 53 only. See 424 Mass. at 74-75.
c. Long v. Board of Appeals of Falmouth
The plaintiff in Long applied to the defendant for a special permit to use a portion of his property, zoned for residential use, for a dental office, a use that Falmouth’s zoning by-law at the time would have allowed. 32 Mass.App.Ct. at 234. Along with his special permit application, the plaintiff submitted a plan that showed “the locus with proposed alterations to an existing structure, parking spaces, and other related features. The plan also showed the lots in the surrounding area.” Id. A few months later, after Falmouth had published notice of a public hearing to consider an amendment to the by-law that would make the plaintiffs properly ineligible for the special permit, the plaintiff submitted a plan to the planning board for his property. Id. The plaintiff put forth this plan “solely for the purpose of obtaining a zoning freeze,” and the planning board endorsed the plan. Id. The defendant voted to grant the plaintiffs special permit. Id.
At issue in Long was the fact that the plan the plaintiff submitted was “not the same as the one submitted with the special permit application" because it showed two adjacent lots, their boundaries, and a proposed change to a common boundary line. Id. at 235, 236. The plaintiff wanted to apply the zoning freeze only to the area of the property for which he had applied for a special permit. Id. The court held that the zoning freeze applied to that area because “(a]ll the land with respect to which the special permit was sought... was included within the proposed new lot shown on the endorsed plan . . .” Id. at 236.
Conversely, here Lots 205, 206, and 207 were included on the Subdivision Plan only as adjacent land, not as divided lots to be considered by the Planning Board as a subdivision. This case, therefore, is distinguishable from Long, in which the Appeals Court found for the plaintiff, holding that the zoning freeze should apply. 32 Mass.App.Ct. at 233. The instant plaintiff is not entitled to apply the zoning by-laws in effect in 1993 to Lots 205, 206, and 207 as they were not presented for consideration in the Subdivision Plan but merely as adjacent land. See id. at 234, 236.
C. The Planning Board’s Rules and Regulations
Applicants are required to conform with a town’s requirements set out in its rules and regulations. See K. Hovnanian at Taunton Inc. v. Planning Board of Taunton, 32 Mass.App.Ct. 480, 485 (1992). Under its Rules and Regulations Relating to the Subdivision of Land,[10] the Town’s Planning Board requires that a definitive subdivision plan include, in part,
(h) Sufficient data to establish on the ground, location, direction, and length of every street and way line, lot line and boundary line, including existing control points (monuments, drill holes, etc.) in the perimeter of the property being subdivided as well as proposed monuments to be set on the streets.
(o) Topographic plan showing two foot contours in areas with slopes of less than ten percent and five foot contours in areas with slopes in excess of ten percent.
The plaintiffs Subdivision Plan did not contain this information with respect to Lots 205, 206, and 207. Lots 205, 206, and 207 were not part of the Subdivision Plan and, thus, are not entitled to the eight-year zoning freeze. See G.L.c. 40A, §6.
ORDER
For all the foregoing reasons, it is hereby ORDERED that defendants’ motion for summary judgment be ALLOWED and that the plaintiffs motion for summary judgment be DENIED.

In the complaint, the plaintiff states that, in August 2000, she conveyed Lots 208, 208A, and 208B to Tapley Construe *299 tion Co., with the understanding that Tapley would convey the land back if she were successful in claiming that those lots were eligible for the zoning freeze. On June 8, 2001, the parties entered into a “Partial Stipulation of Dismissal with Prejudice,” agreeing that the part of the action that related to Lots 208, 208A, and 208B be dismissed with prejudice. The remaining land at issue is comprised of Lots 205, 206, and 207. Presumably this land is owned, in its entirety, by the plaintiff.

The plaintiff is considered to be the non-moving party as the defendants are the prevailing parties.

At the time the Subdivision Plan was submitted, the land was owned by E. Joseph DiCarlo and Barbara DiCarlo. It is not clear when the plaintiff here became the owner, a fact that is immaterial and apparently undisputed. For the sake of clarity and consistency, the term “the plaintiff in the singular will be used throughout.

The 8 IP Plan contains Lots 205, 206, and 207; therefore, the lots would be eligible for the zoning freeze because the plan was submitted in April 1994, before the zoning by-laws were changed in May 1994. Paragraph 7 of Section 6 of G.L.c. 40A applies to plans that fall under G.L.c. 41, §81P; those plans are entitled to a zoning freeze of three years. In this case, the plaintiff did not seek a building permit under the pre-May 1994 zoning by-laws until 2000, well beyond the applicable three-year zoning freeze. It appears that the plaintiff is seeking a determination that Lots 205, 206, and 207 are shown on the 1993 Subdivision Plan so that the eight-year zoning freeze will be found to apply.

Count I of the plaintiffs complaint seeks an annulment of the decision of the ZBA revoking the building permit issued to the plaintiff for Lot 208 by the Building Inspector. The parties entered into an agreement, however, under which all parts of the action relating to Lots 208, 208A, 208B were dismissed with prejudice. Therefore, Count I, relating entirely to Lot 208, is not at issue. Even in the absence of the parties’ agreement, the resolution of Count II would be dispositive of Count I inasmuch as the building permit for Lot 208 would be issued if Count II were resolved in the plaintiffs favor.

The statute states, in pertinent part, “If a definitive plan, or a preliminary plan followed within seven months by a definitive plan, is submitted to a planning board for approval under the subdivision control law... the land shown on such plan shall be governed by the applicable provisions of the zoning ordinance or by-law, if any, in effect at the time of the first such submission while such plan or plans are being processed under the subdivision control law, and, if such definitive plan or an amendment thereof is finally approved, for eight years from the date of the endorsement of such approval . . .” G.L.c. 40A §6 (2002).

The statute states, in pertinent part, “When a plan referred to in section eighty-one P of chapter forty-one has been submitted to a planning board . .. the use of the land shown on such plan shall be governed by applicable provisions of the zoning ordinance or by law in effect at the time of the submission of such plan while such plan is being processed under the subdivision control law... and for a period of three years from tie date of endorsement by the planning board...” G.L.c. 40A §6.

The facts of Heritage Park Dev. Corp. are slightly different from those in Hanna. See 424 Mass. at 72-74; Civil No. 941531C *1. In Hanna, the defendant endorsed its approval of the plaintiffs plan in 1989 on conditions that the plaintiff failed to meet; the plan would be null and void if the plaintiff did not comply. Civil No. 941531C *1. In 1994, the plaintiff resubmitted “a plan for the same land depicted on the original [1989] plan ...” and sought to apply the eight-year statutory zoning freeze in order to benefit from the zoning by-laws in effect in 1989. Id. There was no final approval of the 1989 plan, however; and the Superior Court held that the 1994 plan “was a new submission of a reborn preliminary plan.” Id. at *1, *2. For that reason, the court held that the land was not eligible for the zoning freeze and that the zoning by-laws in effect in 1994 applied. Id. at *2.

The minutes from the March 1, 1993, hearing show that the plaintiffs intent was that the Subdivision Plan create three lots. Additionally, the review fee for the definitive Subdivision Plan was $400.00 per lot shown on the plan; the plaintiff paid $1,802.67, which represented the review fee of $400.00 for each of three lots, the administration fee of $550.00, and postage of $52.67.

The copy of the Rules and Regulations provided by the defendants as Exhibit N states that it was revised in 1995; presumably, the rules at issue here were not altered by this revision.