ROBERT ATWOOD & another *vs*. BEST BUICK, INC.

Essex.    September 20, 1985. — October 30, 1985.

Present: SMITH, CUTTER, & FINE, JJ.

*Uniform Commercial Code*, Revocation of acceptance. *Consumer Protection Act*, Availability of remedy. *Motor Vehicle*, Sale. *Lien*.

The purchaser of a motor vehicle which conformed in all respects to a contract of sale had no right under provisions of the Uniform Commercial Code either to reject the vehicle or to revoke his acceptance of it; nor, in view of his refusal to execute a title document at the request of the seller, was he entitled to claim that the seller had accepted a return of the vehicle when the purchaser left it on the seller's premises. [72-73]

Failure of an automobile dealer to acknowledge in writing, under 940 Code Mass. Regs. 5.04 (14) (a) (1980), a purchaser's purported revocation of his acceptance of a vehicle did not give rise to any rights under G. L. c. 93A on the part of the purchaser, where the cause of the purchaser's dissatisfaction with the vehicle was not related to any nonconformity to the contract of sale, and where any technical violation of the regulation caused no loss to the purchaser. [73-74]

Where the purchaser of a motor vehicle brought the vehicle back and left it on the seller's premises the seller was entitled to a determination of a reasonable sum owed it for storage and to the establishment of a lien in that amount. [74-75]

CIVIL ACTION commenced in the Superior Court on June 23, 1977.

The case was heard by *Katherine Liacos Izzo*, J.

*Efthemios J. Bentas* for the plaintiffs.

*Stuart F. Liss* (*Albert J. Sreter* with him) for the defendant.

FINE, J. The dispute between Robert and Melpomene Atwood, husband and wife, on the one hand, and Best Buick, Inc., on the other, concerns events surrounding the purchase of a new Buick station wagon in 1976. After a two-day trial without a jury in the Superior Court, the judge made extensive findings of facts and rulings of law. She ruled in favor of the

defendant, Best Buick, Inc., on the Atwoods' various claims based on G. L. c. 93A and the Uniform Commercial Code. She ruled in favor of the Atwoods on a counterclaim filed by Best Buick, Inc., seeking a lien for storage, damages for libel and slander, and costs and attorney's fees under G. L. c. 231, § 6F, for defending an allegedly frivolous claim. All parties have appealed. We affirm the judgment except with respect to that count in Best Buick's counterclaim seeking the establishment of a lien on the vehicle for storage charges.

We summarize the facts found by the judge, all of which are supported by evidence, with some minor supplementation from undisputed evidence in the record.

In all relevant dealings with the Atwoods, Best Buick, Inc., was represented by its president, Marvin L. Rosen. In July of 1976, Robert Atwood purchased a new pickup truck from Best Buick, Inc., for $6,150. When he brought it home, Melpomene Atwood objected to the purchase. A few days later, Rosen agreed to take the truck back as a trade-in towards the purchase of another vehicle. On July 28, 1976, the Atwoods were shown various cars on the premises of Best Buick, Inc. When Rosen showed Mrs. Atwood a burgundy-colored car, she told him she didn't like red. Both Atwoods were also shown a silver station wagon which had a red interior. Later that day, Robert Atwood agreed to purchase the silver station wagon, signing necessary forms including a document indicating both the interior and exterior colors. The purchase price of $7,150 was paid in full, with $6,000 being credited for the truck.

Atwood took delivery on July 30, 1976. He took steps to register and insure the station wagon, and he applied for a ccertificate of title in his name. The next day, when he showed the car to his wife, she became upset because of the red interior, and the car was brought back and left on the premises of Best Buick, Inc. On August 2, 1976, the Atwoods met with Rosen, who agreed to help them find a suitable car. The station wagon remained on the premises of Best Buick, Inc. Rosen made extensive efforts over the next few months to accommodate the Atwoods' desires. His efforts included, among many other things, the purchase from other dealers of two new vehicles

in which the Atwoods had expressed an interest. The Atwoods refused to accept either of these vehicles or any of the other vehicles Rosen indicated would be available to them. On August 10, 1976, Rosen secured from the Registry of Motor Vehicles an application to retrieve the certificate of origin for the silver station wagon and to prevent the issuance of a certificate of title to Atwood. See G. L. c. 90D, §§ 6, 7(*b*), and 9. Atwood refused to sign the application. In December of 1976, Rosen notified Atwood that, unless he removed the vehicle from Best Buick's premises, charges would be made for storage at the rate of $5.00 per day. Rosen sent no storage bills, however. The vehicle remains on the defendant's premises, and the certificate of title remains in Atwood's name.

We accept the judge's findings of fact because they are not clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). See *Freyermuth* v. *Lutfy*, 376 Mass. 612, 615 (1978); *C.C. & T. Constr. Co.* v. *Coleman Bros.*, 8 Mass. App. Ct. 133, 135 (1979). With one exception, the conclusions, based upon those facts, are sound.

*Claims Under the Uniform Commercial Code.*

Robert Atwood, not his wife, was the buyer of the station wagon. G. L. c. 106, § 2-103(*a*). He accepted delivery of the vehicle after he and his wife had been given the opportunity to inspect it, inside and out, and after they did in fact inspect it. Atwood acted in ways consistent with ownership, registering the vehicle, insuring it, and signing an application for a certificate of title. The vehicle conformed to the contract and all implied or express warranties that were made. Atwood, therefore, had no right under G. L. c. 106, § 2-601, to reject it. His acts constituted an acceptance of the vehicle. G. L. c. 106, § 2-606. Because the vehicle was conforming, he had no right under G. L. c. 106, § 2-608, to revoke his acceptance. *Geraci* v. *Crown Chevrolet, Inc.*, 15 Mass. App. Ct. 935, 936-937 (1983), and cases cited at 937. The argument that Mrs. Atwood's dislike of the color red gave rise to some legal rights on Atwood's part does not merit discussion. That aside, relying on *Ofgant-Jackson Chevrolet, Inc.* v. *MacQuade*, 338 Mass. 144, 147 (1958), the Atwoods argue that conformity of the

vehicle to the warranties was irrelevant because Rosen in fact had accepted its return. Atwood may not avail himself of this argument, however, because of his refusal to execute the title document upon Rosen's request. The result of that failure was that the vehicle would have the status of a used vehicle for resale purpose and, as a consequence, it would have a significantly lower value than it would have as a new one. Moreover, Atwood's failure to execute the form altogether prevented Best Buick, Inc., from transferring the vehicle to any prospective purchaser. The failure thus constituted an "exercise of ownership by the buyer," wrongful as against Best Buick, Inc., and eliminating any right Atwood might otherwise have had to reject or revoke his acceptance of the vehicle. G. L. c. 106, § 2-602(2)(*a*). The provisions of the Uniform Commercial Code, therefore, offer the Atwoods no basis for relief.

*Claims Under G. L. c. 93A.*

A reasonable course of conduct on the part of a merchant does not ordinarily give rise to rights under G. L. c. 93A. An automobile dealer who, without obligation, goes out of his way to satisfy the whims, not only of his customer, but of a third party, cannot be faulted if the customer does not avail himself of those efforts. The Atwoods contend that Best Buick's conduct is actionable under G. L. c. 93A, § 2(*a*), because it violated a regulation of the Attorney General interpreting that section. The regulation (940 Code Mass. Regs. 5.04[14][a] [1980])[1] provides that it is an unfair or deceptive act for an automobile dealer not to "acknowledge in writing, within three business days after being so notified, a purchaser's revocation of his or her acceptance of a motor vehicle made pursuant to M.G.L. c. 106, § 2-608." Apart from her general conclusion that no c. 93A violation was presented by the facts of this case, the trial judge made no ruling on the effect of the regulation.

There was no written acknowledgement from Rosen within three days of Atwood's notification that he did not want the

---

[1] Although the plaintiffs argue that a failure to comply with this regulation would be a per se violation of G. L. c. 93A, neither party raises the question whether this regulation was in effect in July, 1976.

station wagon. However, the Atwoods' reliance on the regulation of the Attorney General is misplaced. First, Atwood had not sought to revoke his acceptance of a product "whose nonconformity substantially impair[ed] its value to him . . . ." G. L. c. 106, § 2-608, as appearing in St. 1957, c. 765, § 1. His dissatisfaction with the station wagon had nothing to do with its nonconformity with the contract. Second, any technical violation of the regulation was not causally related to any loss the Atwoods sustained. Atwood's refusal to execute the title form, wrongful as to the seller, and his refusal to accept Rosen's reasonable offers of substitute vehicles, surely predominated over any absence of a communication in writing from Rosen as the causes of the losses the Atwoods sustained.

*Best Buick's Appeal.*

We may not consider the issue raised under G. L. c. 231, § 6F, because any appeal from a determination under that section is to a single justice of this court, and it must be filed within ten days of receiving notice of the decision. G. L. c. 231, § 6G. The appeal was not timely. Nor do we find error in the judge's conclusion that slander and libel were not proved. We see no basis, however, for the denial of Best Buick's rights under G. L. c. 255, §§ 25 and 26. Those sections provide for the establishment and enforcement of a lien for proper charges for storage of a motor vehicle brought to the premises of a public garage with the owner's consent. At all times after July 31, 1976, Atwood has been the owner of the vehicle which has been on the premises of Best Buick, Inc., with his knowledge and consent. Rosen, in his letter of December 9, 1976, gave Atwood fair notice of his intent to charge a storage fee at the rate of $5.00 per day, unless the car was removed. The letter also stated that the car would be sold if the accrued charges were not paid within a reasonable time. Best Buick, Inc., properly could charge a fee for storing a vehicle on its premises on a theory of implied contract (see Restatement [Second] of Contracts §§ 4, 19, 69(1)[a] [1979] and *Flesher* v. *Handler*, 303 Mass. 482, 483-484 [1939]), and it took all of the steps necessary to establish and enforce a lien for the amount due. See *Doody* v. *Collins*, 223 Mass. 332 (1916);

*Flesher* v. *Handler, supra.* The judge ruled that Best Buick, Inc., could not recover because it failed "to make substantial effort to establish a lien for storage." We are at a loss to know what Best Buick, Inc., failed to do that it should have done. Since Best Buick, Inc., gave notice in a letter of its intent to charge a storage fee, the failure to send bills ought not to defeat the claim. Since the amount to be recovered must be reasonable, the case must be remanded to the trial court for a determination of the reasonable amount owed for storage and the establishment of a lien in that amount.

The judgment for the defendant on all counts of the complaint is affirmed. The judgment for the plaintiffs on the counterclaim is affirmed, except as to count 2. The order, included in the judgment, that Atwood remove the vehicle from the defendant's lot, is vacated, and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*