INDUSTRIA DE CALCADOS MARTINI LTDA. *vs.* MAXWELL
SHOE CO., INC.

No. 92-P-1322.

Suffolk. December 20, 1993. - March 21, 1994.

Present: ARMSTRONG, SMITH, & PORADA, JJ.

*Uniform Commercial Code*, Acceptance of goods, Warranty. *Contract*,
Performance and breach, Warranty. *Sale*, Acceptance of goods, War-
ranty. *Consumer Protection Act*, Businessman's claim, Availability of
remedy. *Damages*, Breach of warranty.

At the trial of a breach of contract claim by a shoe manufacturer against a
wholesale distributor of shoes, arising from a shipment of a quantity of
shoes found to be defective, the judge's conclusion that the distributor
accepted the shoes was not clearly erroneous, in light of the provision of
§ 2-206 (1) of G. L. c. 106, the Uniform Commercial Code, that a
buyer accepts goods when it "does any act inconsistent with the seller's
ownership," where the distributor's sending the shoes to Maine for re-
pair, without instructions from the manufacturer, was not one of the
prescribed remedies a buyer is allowed to pursue under § 2-604 once it
lawfully rejects the goods, and thus was inconsistent with its claim that
the manufacturer retained ownership. [272-273]
At the trial of a distributor's breach of warranty claim against a shoe
manufacturer, arising from the manufacturer's shipment of a quantity
of shoes found to be defective, the judge did not err in concluding that
the manufacturer was in breach of its implied warranty of mer-
chantability under § 2-314 (2) (*c*) of G. L. c. 106, the Uniform Com-
mercial Code, where the issuance of a certificate of inspection under
§ 1-202 at the place of shipment did not preclude the judge from find-
ing that the shipment was defective when received; where the record
contained no evidence warranting a finding that the distributor, by
prior knowledge of a defective condition, was estopped to assert a claim
of breach of warranty; and where, even if the judge found that the
shoes were shipped "F.O.B. Brazil," as the manufacturer contended,
that finding would not preclude the distributor's claim. [273-274]
A judge did not err in dismissing a manufacturer's claim under G. L. c.
93A, the Consumer Protection Act, against a distributor to which it
had shipped a quantity of shoes, where the evidence did not warrant a
finding that the distributor had acted unfairly and unethically by stop-
ping payment on its check and then taking delivery of the shoes two
days later, inasmuch as the distributor, when it stopped payment on the

check, was seeking to cancel the order and did not expect to take delivery thereafter. [274-275]
In the circumstances of an action arising out of a manufacturer's shipment of a quantity of shoes to a wholesale distributor, the judge did not err in her calculation of damages for the manufacturer's breach of the implied warranty of merchantability. [275-276]

CIVIL ACTION commenced in the Boston Municipal Court Department on November 17, 1988.

Upon transfer to the Superior Court Department, the case was heard by *Catherine A. White*, J.

*Audrey LaRowe Nee* for the plaintiff.

*Howard I. Rosen* for the defendant.

PORADA, J. The plaintiff, Industria De Calcados Martini Ltda. (Martini), a Brazilian shoe manufacturer, filed an action in the Boston Municipal Court against the defendant Maxwell Shoe Co., Inc. (Maxwell), a wholesale distributor of shoes, for breach of contract and for violation of G. L. c. 93A arising out of the sale of 12,042 pairs of men's shoes by Martini to Maxwell. Maxwell filed an answer and a counterclaim against Martini claiming that the shoes did not conform to the contract specifications and, thus, Martini was in breach of the implied warranty of merchantability. The action was removed to the Superior Court and tried by a judge sitting without a jury. The judge ruled that Maxwell was in breach of its contract and awarded damages to Martini in the sum of $25,890.30, the balance remaining due on the parties' contract. The judge also determined that Maxwell had not violated G. L. c. 93A. On Maxwell's counterclaim, the judge decided that Martini was in breach of the implied warranty of merchantability and awarded Maxwell the sum of $24,084, leaving a net loss to Maxwell of $1,803.30. Both Martini and Maxwell appealed from the judgment. We affirm.

We summarize the facts as found by the judge. Martini manufactured shoes for Thom McAn, a shoe retailer. Thom McAn rejected the shoes because of a finish defect. Thereafter, a sample of the shoes from this order was shown to the president of Maxwell by Louis Fingerhut, a shoe broker. The

sample of shoes did not appear to have any defects nor was Maxwell informed that Thom McAn had rejected the shoes due to the finish defect. After inspecting the shoes, Maxwell placed an order through Fingerhut's company, Fingerhut Footwear Inc., for 12,042 pairs of men's shoes from Martini. The purchase order invoices indicated the order was for "regular" shoes "as sampled." The price to be paid for the shoes was $116,205.30 ($9.65 a pair), of which $90,315 was to be paid by a letter of credit and the balance of $25,890.30 by personal check. On February 1, 1988, Maxwell established a letter of credit in the sum of $90,315 in favor of Martini with the Bank of Boston. In its application for the letter of credit, Maxwell attached a pro forma invoice prepared by Fingerhut which indicated that the shoes were to be inspected in Brazil by Southline, a trading company in Brazil chosen by Fingerhut to inspect the shoes. The issuance of the letter of credit was contingent upon the issuance of a certificate of inspection by Southline. On or about February 8, 1988, Maxwell also sent its personal check to Martini in the sum of $25,890.30, which was received by Martini.

About February 1, 1988, Maxwell received a supplemental sample of the shoes from Brazil. Upon inspection, Maxwell discovered the shoes were cracked and peeling. As a result, Maxwell immediately contacted Fingerhut and informed him that if all the shoes were in that condition, he did not want the shoes shipped. Fingerhut in turn contacted his employees in Brazil to find out (1) if the shoes had been inspected by Southline, (2) whether there were any quality problems, and (3) if so, whether they could be corrected.

The shoes were shipped on February 10, 1988. A certificate of inspection was issued by Southline dated February 18, 1988, certifying that the shoes were in strict compliance with the specifications in the contract. The shoes arrived at Maxwell's warehouse on March 23, 1988. Upon inspection, Maxwell discovered the entire shipment was defective. All the shoes were cracked and peeling. Maxwell immediately contacted Fingerhut and told him that he did not want the shoes and wanted returned the money already collected by

Martini under the letter of credit. Maxwell had previously stopped payment on its check for $25,890.30, so Martini never received that payment. Fingerhut in turn contacted his associates at Southline in Brazil and informed them that Maxwell had rejected the shoes, but that he was trying to work out a solution to the problem. Subsequently, Maxwell notified Fingerhut by letter that the shoes had been misrepresented; that it considered Fingerhut responsible for recovering the money that it had paid Martini; and that if it did not have a positive response from Fingerhut by May 1, 1988, it would start selling the shoes at any price and would charge any expenses or losses to Fingerhut. Maxwell also offered to reship the goods provided it received a guaranty of payment of its shipping costs. When Maxwell did not receive word from anyone by May 1, 1988, as to whether the shoes were to' be reshipped, it sent the shoes to Maine to be refinished at two dollars a pair. Maxwell then sold the refinished shoes over the next two years for the sum of $145,737 which it retained.

Martini never received notice directly from Maxwell itself regarding the quality of the shoes or that Maxwell wished to return the shoes. When Maxwell stopped payment on its check, Martini did ask Southline why Maxwell did so and was informed by Southline that Maxwell was dissatisfied with the shoes but that they were trying to work out a solution to the problem.

Based on these facts, the judge concluded that Maxwell, at first, properly rejected the shoes but once it shipped the goods to Maine to be refinished, it accepted them and, thus, was liable for the remaining balance due on its contract with Maxwell in the sum of $25,890.30. The judge determined, however, that Martini was liable for breach of the implied warranty of merchantability, because the shoes received by Maxwell were defective and could not be sold by Maxwell in that condition. The judge decided that Maxwell was entitled to recover only the cost of refinishing the goods in the amount of $24,084 (two dollars a pair). The judge also deter-

mined that Maxwell's issuance of a stop payment of its check for $25,290.30 was not a violation of G. L. c. 93A.

Martini claims the judge erred (1) in failing to find when and where the shoes were to be delivered and in failing to determine the effect of the issuance of the certificate of inspection by Southline on the issue of acceptance; (2) in concluding that it was in breach of the implied warranty of merchantability; and (3) in ruling that Maxwell had not violated G. L. c. 93A. In its cross appeal, Maxwell claims the judge erred (1) in finding it had accepted the shoes and (2) in her computation of damages on its claim for breach of implied warranty of merchantability. We now address the parties' claims of error.

The principal issue in this case is whether the shoes were accepted by Maxwell. The judge ruled that Maxwell accepted the shoes when it shipped the goods to Maine to be refinished on the ground that an alteration or repair of a defect in goods is an act "inconsistent with the seller's ownership," G. L. c. 106, § 2-606(1)(*c*), as inserted by St. 1957, c. 765, § 1, as it is not one of the prescribed remedies which a buyer is allowed to pursue once he rightfully rejects the goods. G. L. c. 106, § 2-604. Maxwell claims this was error because the judge applied too rigid an interpretation of G. L. c. 106, § 2-604.

Section 2-604, as inserted by St. 1957, c. 765, § 1, provides in pertinent part, "if the seller gives no instructions within a reasonable time after notification of rejection the buyer may store the rejected goods for the seller's account or reship them to him or resell them for the seller's account with reimbursement. . . ." Maxwell contends that these remedies are not exhaustive and that a buyer who acts in good faith should be allowed to take reasonable action to mitigate its damages. See Uniform Commercial Code § 2-604, comment, 1B U.L.A. (Master ed. 1989). Maxwell relies upon the case of *Delano Growers' Coop. Winery* v. *Supreme Wine Co.*, 393 Mass. 666, 678-681 (1985), for support for its contention.

We think the *Delano* case is distinguishable. In *Delano*, the seller of defective wine instructed the buyer, who had made a valid rejection of the wine, to reprocess it and sell it at a reduced price. *Id.* at 676-677 & n.4. The sales proceeds minus the buyer's costs for reprocessing and resale were credited to the seller. *Id.* at 677 n.4, 678-681 & n.5. Here, Maxwell received no such instructions from Martini. Instead, it acted on its own in sending the shoes for refinishing and then selling them and retaining the proceeds for its own benefit. Under G. L. c. 106, § 2-606(1)(*c*), a buyer accepts goods when it "does any act inconsistent with the seller's ownership." Accordingly, we do not think the judge's ruling, that Maxwell's shipment of the goods to Maine to be refinished was inconsistent with its claim that Martini retained ownership of the shoes, was clearly erroneous. See *Atwood* v. *Best Buick, Inc.*, 21 Mass. App. Ct. 70, 71-73 (1985) (acts of registering and insuring a car deemed inconsistent with buyer's claim that seller retained ownership of car).

Even though the judge found that Maxwell had accepted the goods, she found that Martini was liable for breach of the implied warranty of merchantability. G. L. c. 106, § 2-314(2)(*c*), as inserted by St. 1957, c. 765, § 1 (goods must be "fit for the ordinary purpose for which such goods are used").[1] Martini claims there was no breach of warranty because (1) the certificate of inspection provided by Southline is conclusive on the issue whether the goods were nonconforming; (2) Maxwell got exactly what it bargained for — defective shoes; and (3) since the goods were shipped F.O.B. Brazil, all risk of loss was on Maxwell.

Martini relies upon G. L. c. 106, § 1-202, for its argument that the issuance of the certificate of inspection established conclusively that the shoes conformed to the contract. Martini misconstrues this section. This section simply establishes the document as prima facie evidence of its own authenticity

---

[1] Under G. L. c. 106, § 2-607(3)(*a*), a buyer is required to notify the seller of any breach of warranty or be barred from a remedy. Martini has not disputed the adequacy of the notice that the shoes were in breach of the implied warranty of merchantability.

and evidence of the facts contained therein but leaves to the court the ultimate determination of the facts when they are questioned. Accordingly, the issuance of the certificate did not bar the judge from finding the shoes were defective when received by Maxwell. See *Plastileather Corp.* v. *Aetna Cas. & Sur. Co.,* 361 Mass. 356, 358 (1972).

Martini's contention that Maxwell got exactly what it bargained for is based on its claim that Southline issued the certificate of inspection after having been informed by Maxwell that the shoes were defective and that it did not want the shoes. There is, however, nothing in the record that demonstrates that Maxwell knew at the time Southline issued the certificate of inspection that the problem had not been corrected. Moreover, there was evidence that the defect did not surface until the shoes were exposed to cold weather during shipment. In these circumstances, we do not conclude that the judge erred in failing to find that Maxwell was estopped to assert a claim for breach of warranty.

Martini's argument that Maxwell could not assert a claim for breach of warranty because there was evidence that the shoes were shipped F.O.B.[2] Brazil is also without merit. The judge made no finding as to the date and place of delivery of the goods. Her failure to do so, however, is not error. Even if the judge had found that the shoes were shipped F.O.B. Brazil as Martini contends, that finding would not preclude Maxwell's action for breach of the warranty of merchantability. G. L. c. 106, §§ 2-607 & 2-608.

Martini argues that the judge committed error when she dismissed the claim for violation of G. L. c. 93A. It contends that Maxwell acted unfairly and unethically in stopping payment on its check for $25,890.30 on February 8, 1988, and then taking delivery of the shoes on February 10, 1988. The

---

[2]General Laws c. 106, § 2-319(1), as inserted by St. 1957, c. 765, § 1, provides: "Unless otherwise agreed the term F.O.B. (which means 'free on board') at a named place, even though used only in connection with the stated price, is a delivery term under which (*a*) when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this Article . . . and bear the expense and risk of putting them into the possession of the carrier. . . ."

judge simply ruled that Martini's claim was not borne out by the evidence. Her conclusion was not clearly erroneous. *McAvoy* v. *Shufrin*, 401 Mass. 593, 601 (1988).

The evidence showed that Maxwell stopped payment on its check after inspecting samples of the shoes sent to them by Martini and finding that the shoes had a cracked finish and were peeling. Since at the time Maxwell issued the stop payment order, it did not expect to take delivery or want the shoes shipped and notified Fingerhut to cancel the order, the stop payment order could not be construed to be the type of "immoral, unethical, oppressive, or unscrupulous" act that would constitute a c. 93A violation. *Massachusetts Farm Bureau Fedn., Inc.* v. *Blue Cross of Mass., Inc.*, 403 Mass. 722, 729 (1989), quoting from *Zayre Corp.* v. *Computer Syss. of Am., Inc.*, 24 Mass. App. Ct. 559, 570 (1987).

Finally, Maxwell claims the judge erred in her calculation of damages for Martini's breach of the implied warranty of merchantability. Maxwell contends that it should have received a sales commission of $14,573.70 and should have been reimbursed for shipping the shoes to Maine as part of its incidental damages. Based upon the evidence presented, we conclude there was no error.

Under G. L. c. 106, § 2-603 and § 2-604, when a buyer rejects goods and sells them for the account of the seller, it is entitled to a sales commission. While the judge found that Maxwell rightfully rejected the shoes, she found that Maxwell subsequently accepted them. When Maxwell sold the shoes, it sold them not for the account of Martini but for its own benefit and, thus, is not entitled to a sales commission.

Nor do we hold that the judge erred in denying Maxwell the charges of $2,408 which it now labels transportation costs for shipping the goods to Maine. During the trial, Maxwell introduced no evidence of the cost of shipping the goods to Maine. Instead, it labeled the sum of $2,408 as a storage or handling charge based on an assessment of twenty cents per pair of shoes.

Since Maxwell accepted the goods, we conclude that it could not properly charge Martini for their storage.

*Judgment affirmed.*