Greco, J.
This is a summary process action to recover possession of commercial premises and unpaid rent pursuant to a rent acceleration clause. Judgment for possession and damages in the amount of $20,263.77 was entered in favor of the plaintiff-landlord, Cummings Properties, LLC (“Cummings”). Cummings filed this Dist/Mun. Cts. R A D. A, Rule 8C, appeal of the trial judge’s denial of its requests for rulings of law pertaining to damages. Cummings’ position is that it was entitled to damages of $135,091.08, the amount due under the rent acceleration clause of the lease.
The original term of the commercial lease between Cummings and defendant-tenant Empire Technologies, Inc. (“Empire”) was for two years ending on January 30, 2001. Rent was $2,092.50 per month. The lease provided for an automatic extension for five years unless either party, at least six months prior to January 30, 2001, notified the other of its intention not to extend. Empire’s attempt to terminate the lease and avoid the automatic extension failed because its notice to that effect was sent only a month and a half before the original termination date. Accordingly, the five-year extension took effect.[1] This summary process action was filed following Empire’s failure to pay rent for February, 2001.
In seeking damages for both February’s rent and all rent for the next five years through January of 2006, Cummings relied on paragraph 20 of the lease, entitled “DEFAULT AND ACCELERATION OF RENT.” That provision stated, in pertinent part
If LESSEE shall default in the payment of the security deposit, rent, taxes, substantial invoice from LESSOR... for goods and/or services or other sum herein specified, and such default shall continue for ten (10) days after written notice thereof, and because both parties agree that nonpayment of said sums when due is a substantial breach of the lease, and, because the payment of rent in monthly installments is for the sole benefit and convenience of LESSEE, then ... the entire balance of rent *85 which is due hereunder shah become immediately due and payable as liquidated damages.
In awarding damages of $20,263.77, it would appear that the trial judge was willing to enforce the acceleration clause, but only to the extent of giving Cummings an amount representing rent through October of 2001. While the trial judge denied ah of the rulings of law requested by Cummings, the denials that form the basis of this appeal principally concern the law of liquidated damages. Those requests sought rulings as to when a provision providing for such damages is enforceable (No. 10), whether a defense based on the unenforceability of such a provision must he affirmatively pled (No. 11), whether the defendant bears the burden of proving the provision is unreasonable (No. 12), and whether the evidence warranted a finding that the particular provision in this case was enforceable (No. 13). Cummings’ remaining requests sought rulings that the plaintiff had no duty to mitigate damages (No. 14), and that the plaintiff was entitled to attorney’s fees and interest (No. 16).
Beginning with the last two requests, we conclude that No. 14, which sought a ruling that the plaintiff “ha[d] no duty to mitigate its damages because it is a commercial landlord,” was properly denied. While a commercial landlord need not mitigate damages when the tenant elects to vacate the leased premises, Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 224 n.4 (1992), such a duty would arise if the landlord terminates the lease by eviction, as was the case here. See Fifty Associates v. Berger Dry Goods Co., 275 Mass. 509, 514 (1931) (“The plaintiff was entitled to rely upon the defendant’s agreement to pay rent and could recover rent thereon without diminution up to the termination of the lease by eviction, entry for condition broken, or otherwise, and no rent thereafter.”). See also Cantor v. Van Noorden, 4 Mass. App. Ct. 819 (1976). On the other hand, No. 16 should have been allowed. The interpretation of a written contract is a matter of law, Lumber Mutual Ins. Co. v. Zoltek Corp., 419 Mass. 704. 707 (1995), and this lease clearly provided for the recovery of attorney’s fees and interest
The remaining requests, as noted, all dealt with the law on liquidated damages. Request No. 11 sought a ruling that the defendant’s failure to plead affirmatively, as a defense, that the liquidated damages clause was an unenforceable penalty resulted in its “waiver and exclusion from the case.” We need not address whether it was error to deny this request since we conclude that the defense was adequately pled in the defendant’s third affirmative defense, which stated that the plaintiffs “claim for damages... based upon the acceleration... is unconscionable.” Any error, therefore, in the denial of request No. 11 was harmless. Request No. 13 sought a ruling that a particular view of the evidence warranted a finding for the plaintiff. That request was properly denied as presenting a mixed question of law and fact. See Malley v. Shaw’s Supermarkets, Inc., 1996 Mass. App. Div. 117.
On the other hand, requests Nos. 10 and 12 were in proper form and set out correct statements of law. Request No. 10 tracked the language of the Supreme Judicial Court in Kelly v. Mans, 428 Mass. 877, 880 (1999) and A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 675 (1956), indicating the circumstances in which a liquidated damages provision would be enforced. As to No. 12, we would agree with the First Circuit Court of Appeals that if the Supreme Judicial Court “were required to decide the issue ... definitively, it would assign the burden of proving the unenforceability of a liquidated damages clause to the party raising that defense.” Honey Dew Associates, Inc. v. M & K Food Corp., 241 F.3d 23, 27 (1st Cir. 2001). Therefore, it was error to deny these requests. The fact that the trial court found in favor of the plaintiff did not render Nos. 10 and 12 irrelevant The reason is that the trial court did not award the full amount of the damages sought and the basis for the award it did make was not self-evident It is clear that the court did *86 not fully enforce the acceleration of rent provision, but there is nothing in the record to indicate that the $20,263.77 amount awarded represented Cummings’ actual damages. Because that award would have had to include some future rent, it would not appear that the trial court concluded that the acceleration provision imposed a penalty and was thus unenforceable, although such a conclusion may arguably have been warranted.[2] In these circumstances, a new hearing for the assessment of damages is required.
Accordingly, the judgment for Cummings for possession is affirmed, but the award of damages is vacated. The case is returned to the Woburn Division for a hearing on the assessment of damages. Pursuant to the lease provisions, the trial court shall also assess reasonable attorney’s fees on the basis of the standard criteria, see Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979); Bollen v. Camp Kingsmont, 2000 Mass. App. Div. 56, 57, and interest.
So ordered.

 Empire has not filed a brief on this appeal. Therefore, no issue is before us as to the enforceability of the automatic extension provision of the lease. In any event, see Loithertstein v. International Business Machines Corp., 11 Mass. Ct. 91, 94 (1980) (such a provision “cannot be judicially rewritten to cure an oversight or to relieve [the lessee] from the effect of an unforeseen contingency.”).

 As the Supreme Judicial Court stated in Commissioner of Insurance v. Massachusetts Accident Co., 310 Mass. 769 (1942): “[W]here alease contains many covenants of varying importance, and where a breach of some of them would result in a loss which could be accurately determined and would be inconsiderable in comparison with the amount required by the lease to be paid although the damage resulting from a breach of some of the other covenants would be substantial and difficult exactly to ascertain, the sum designated to be paid upon a breach of any of these covenants is a penalty and not liquidated damages.” In the lease between Cummings and Empire herein, the acceleration of rent clause would be triggered not only by Empire’s failure to pay rent, but also by its failure to pay the $4,000.00 security deposit, any amount of taxes due, or any “substantial invoice ... for goods and/or services.” Id. at 771. Any amounts due for these items other than for future rent, by their nature, could be “accurately determined ... and inconsiderable” in comparison to the $135,091.08 being sought in accelerated rent