Coven, J.
This is a Dist./Mun. Cts. R. A. D. A., Rule 8C, appeal by third-party defendant Rocco Vigorito, doing business as New England Body Works (“Vig-orito”) , of a judgment against him for violating G.L.c. 93A, §11 through his use of a G.L.c. 255, §25 garageman’s lien to secure the payment of excessive fees.
The third-party action was tried "without a jury, and we summarize the trial judge’s written findings. John F. Hanlon (“Hanlon”) was insured under a standard Massachusetts automobile insurance policy purchased from the third-party plaintiff, Commonwealth Mutual Insurance Co. (“Commonwealth”). On July 1, 1999, there was an automobile accident involving Hanlon’s vehicle and a vehicle insured by The Premier Insurance Company of Massachusetts. Hanlon’s vehicle was disabled, and he authorized towing of the vehicle to Vigorito’s garage for repairs.
On July 2,1999, Mark Mattot (“Mattot”), an appraiser for Taft Appraisal Service (“TAS”), was assigned to appraise the damage to Hanlon’s vehicle. Mattot called Vigorito to arrange an inspection of the vehicle, but received a recorded message that Vigorito’s garage would be closed until July 12,1999. Mattot called again on July 13, 1999 and Vigorito scheduled an appointment for him to view the vehicle on July 15,1999. During the appraisal, Mattot and Vigorito both thought that the vehicle could be declared a total loss. Vigorito suggested to Mattot that he would be willing to repair the vehicle for a flat fee of $11,000.00, which would include repair of any additional, hidden damage discovered during the repair process. Mattot responded that he would inform his supervisor of Vigorito’s offer. On July 20, 1999, Warren Taft (‘Taft”) of TAS called Vigorito and informed him that the vehicle was declared a total loss.
*27 The next day, July 21,1999, Vigorito informed Taft that work and storage fees totaling $4,278.70 were owed on the unrepaired vehicle. This amount included storage fees of $1,610.00 calculated at seventy ($70.00) dollars per day[3] for the twenty-three days Hanlon’s vehicle was at Vigorito’s. The remaining amount, $2,668.70, consisted of various assessments which included handling fees, estimate fees, diagnostic fees, yard clean up fees and parts handling fees.
Before releasing the vehicle to Commonwealth’s tow operator, Vigorito asserted his G.L.c. 255, §25 lien and required Commonwealth to pay all assessed charges and fees.[4]
Relying on Atwood v. Best Buick, Inc., 21 Mass. App. Ct. 70, 75 (1985), the trial judge construed G.L.c. 255, §25 as permitting a statutory lien for only “reasonable” charges, and found that a reasonable storage fee in this case was thirty-five ($35.00) dollars a day. The judge rejected Vigorito’s contention that the dismissal by the Auto Damage Appraiser Licensing Board of other insurer’s claims against Vigorito for excessive charges in unrelated cases constituted an implied and binding administrative ruling that Vigorito’s fees in all cases were reasonable. Using the $35.00/day rate, the court calculated that Vigorito had overcharged Commonwealth for storage fees by $1,200.00. The judge also found that Vigorito was entitled to $500.00 at most in miscellaneous charges, and that the remainder of the fees Vigorito had assessed were either duplicative or unearned and “to some extent fraudulent.”
Having found $3,288.70 in excessive fees, the judge determined that the use of statutory lien “to extort them” constituted a violation of G.L.c. 93A, §11. The court further found that Vigorito’s use of this practice was knowing and wilful, and assessed treble damages plus $4,600.00 in reasonable attorney’s fees.
On this appeal, Vigorito argues that: (1) in establishing a reasonable storage rate, the trial judge acted in a Legislative capacity in violation of the Massachusetts Declaration of Rights, Part I, Art. X and Art. XXX; (2) the Commonwealth’s exclusive remedy was to file an action for replevin under G.L.c. 255, §36; (3) the court’s ultimate finding was inconsistent with its rulings on Vigorito’s requests for rulings; and (4) the ultimate finding was against the weight of the evidence.
1. Vigorito contends that Art. X of the Massachusetts Declaration of Rights affords him unbridled freedom in contracting with other willing parties, unless the Legislature has placed specific restrictions on that right by statute.[5] He further *28 contends that in establishing a reasonable storage fee in this case, the trial judge impaired his freedom to contract, that such action is a purely Legislative function, and that the judge thus violated the separation of powers doctrine found in Art. XXX of the Massachusetts Declaration of Rights.[6] However, in neither Vigorito’s requests for rulings of law, nor in the trial judge’s findings, is there any indication that Vigorito’s arguments regarding any violation of the Massachusetts Declaration of Rights were brought to the judge’s attention and made the subject of a ruling. As Vigorito’s constitutional challenge was raised for the first time on this appeal, we do not consider it. Champigny v. Commissioner, 422 Mass. 249, 250 (1996); Adoption of Donald, 52 Mass. App. Ct. 901 (2001); Massachusetts Broken Stone Co. v. Weston, 45 Mass. App. Ct. 748, 754-755 (1998).
2. Vigorito next argues that the exclusive remedy available to Commonwealth to challenge his fees was the commencement of a replevin action pursuant to G.L.c. 255, §36. We disagree. It is true that §36 provides a consumer with a remedy for the recovery of property held under a lien. This case did not, however, involve any challenge to the validity of Vigorito’s lien itself under the procedures set forth in §36 and §37, any issue about the amount of the lien as established under G.L.c. 255, or any question of whether the return of the vehicle could be ordered under that statute. What was litigated and decided herein was that the use of the lien statute to compel payment of excessive and unreasonable fees was a violation of G.L.c. 93A, §11. See Kattar v. Demoulas, 433 Mass. 1, 14 (2000) (unfair use of a lawful right in consumer context gives rise to a valid consumer protection claim); Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473-475 (1991) (use of discretionary contract right to “forc[e] financial concessions” constitutes unfair and deceptive act in violation of G.L.c. 93A).[7]
3. Vigorito also claims that the trial judge’s allowance of Vigorito’s request for ruling of law as to the sufficiency of Commonwealth’s evidence to satisfy its G.L.c. 93A burden of proof was inconsistent with the court’s ultimate finding. Vigorito waived any consideration of this issue on appeal by neglecting to raise and preserve it in the trial court by means of a Mass. R. Civ. R, Rule 59, motion for a new trial or a motion to correct the inconsistency. Cook v. Kozlowski, 351 Mass. 708 (1967); Diorio v. Bragan, 2000 Mass. App. Div. 29, 29-30 and cases cited.
*29 4. Whether particular action or conduct is unfair or deceptive depends on the particular circumstances of a case and presents a question of fact for a trial court Schwanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390, 414 (1991). There was no error in the trial judge’s ultimate conclusion that Vigorito’s use of the lien statute to secure improper and excessive fees constituted a violation of G.Lc. 93A We do agree, however, with Vigorito that the evidence did not support a finding that the storage fees were excessive.[8]
Commonwealth’s witnesses agreed that a storage rate is determined upon a number of factors that are particular to a specific garage (i.e., rent, mortgage, space, labor costs and quality of work). There was candid acknowledgment by these witnesses that they had no information specific to Vigorito’s garage upon which they could assess the appropriateness of Vigorito’s rates. Nor did they have any information about other shops which they could have utilized to evaluate and compare their fees.[9] Given the evidence presented, a determination that $35.00 was a “reasonable” rate for Vigorito’s storage fees was purely speculative.[10]
Apart from the storage fees, the trial judge properly determined that $2,168.70 in charges imposed by Vigorito were duplicative or unearned. Vigorito does not challenge that finding, and the judge’s ultimate determination that such improper and excessive fees constituted a violation of G.Lc. 93A, §11 was clearly warranted.
The judge’s findings specified the precise manner in which he calculated the damages awarded. As to the storage fees, the judge determined that a fee of $35.00 per day was warranted, and thus reduced Vigorito’s daily storage fee by that amount and excluded the period of time when Vigorito’s repair shop was closed. Since we conclude that Ihe reduction in the storage fee rate was in error, albeit only as to the fourteen days in question when Vigorito’s was open, we are in a position to correct the damage award by reinstating the full $70.00 per day rate. Thus the court’s award of damages to Commonwealth is reduced by $490.00, bringing the total damages to $2,798.70. That figure trebled is $8,396.10.
Accordingly, the trial court’s finding for Commonwealth on its third-party complaint against Vigorito is affirmed. The trial court’s order for damages is vacated, *30 and judgment is to be entered for Commonwealth in the amount of $8,396.10, plus the reasonable attorney’s fees awarded by the trial court, costs and interest. Commonwealth is also entitled to reasonable attorney’s fees for this appeal and we authorize the trial judge to make that assessment. Khudisman v. CNA Ins. Co., 2000 Mass. App. Div. 217, 220. Finally, Commonwealth is awarded the costs of this appeal, which shall be calculated by the trial court clerk in accordance with Dist./ Mun. Cts. R. A. D. A., Rule 26.
So ordered.

 Pursuant to G.L.c. 159B, §6B, the Legislature has established a rate of twenty dollars per day for non-commercial vehicles that are “involuntarily towed” to a storage yard by order of a police officer or other public official. It is undisputed, however, that Hanlon had had a previous automobile repair experience with Vig-orito and expressly authorized the towing of his automobile to Vigorito’s garage.

 Although not material to this appeal, it would appear that Commonwealth attempted to deduct from its insurance payment to Hanlon an amount reflecting what it concluded were excessive fees charged by Vigorito. Hanlon then commenced this action against Commonwealth, which in turn filed this third-party complaint against Vigorito. Hanlon’s claims were resolved prior to trial.

 Art X states, in relevant part: “Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws. He is obliged, consequently, to contribute his share to the expense of this protection; to give his personal service, or an equivalent, when necessary: but no part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people. In fine, the people of this commonwealth are not controllable by any other laws than those to which their constitutional representative body have given their consent And whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor.”

 Art XXX provides: “In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men.”

 A violation of G.L.c. 255 by an automobile repair shop has been recognized as actionable under G.L.c. 93A. Hanner v. Classic Auto Body, Inc., 10 Mass. App. Ct. 121 (1980) (seizure of automobile without process to perfect lien was a violation of G.L.c. 93A).

 Deciding as we do, we do not address the question of whether Atwood v. Best Buick, Inc., supra was read too broadly. In Atwood, a car was purchased in 1976 and valued, at that time, at $7,150.00. By 1985, when the case was finally decided in favor of the defendant, the car had been stored at the defendant’s place of business for nine years at a rate of five dollars per day. The total storage charge would, therefore, have been $15,415.00. It may well be that the Atwood Court thought it unfair to allow such a lien to be determined against the plaintiff in such protracted litigation, and its use of the word “reasonable” in its opinion may have had nothing to do with whether a court can interpret the “proper charge” language found in G.L.c. 255, §25 as a “reasonable charge” for the purpose of establishing a rate.

 Commonwealth’s property claim consultant testified as follows:
Q. ‘"With respect to Mr. Vigorito, do you know the calculation that was done for him to arrive at his own rate?”
A. “I have no idea.”
Taft testified as follows:
Q. “So you don’t have any idea of how body shops arrive at their storage rates.”
A. “That is correct.”
Mattot testified that storage fees in the area ranged from twenty to one hundred dollars per day. When asked about the range of rates and the methodology used by any particular shop to set its rates, Mattot answered, “I don’t know.”

 This is not to suggest that a judicial determination cannot be made that a particular storage rate is so excessive as to constitute an unfair trade practice under G.L.c. 93A, §11. Rather, the evidence was insufficient to support such a finding here.