Williams, J.
The defendant Alain Checroune (“Checroune”) appeals pursuant to Dist./Mun. Cts. RA.D.A, Rule 8C, the finding of the trial judge that Checroune is individually liable to the plaintiff, David Amory d/b/a David Amory Architects (“Amory”), for certain architectural fees. Specifically, Checroune asserts he cannot properly have been found liable because he was acting solely as an agent for a principal, the defendant corporation South Shore Realty, LLC (“South Shore”).[1] We affirm the judgment in favor of Amory.
In a proposal letter of 29 October 1997 Amory sent to Checroune, Paul Atlan (“Atlan”), and something called “South Shore Realty Investors” in care of Boston United Realty Corp., Amory agreed to perform architectural services for the renovation of the “old Patriot Ledger Building” in Quincy. Atlan apparently signed the *13 “acceptance” line of the letter. On 16 October 1997, Checroune and Atlan had created South Shore for the purpose of buying real estate, and indeed that day South Shore bought the building from Boston United Realty Corp., of which corporation Checroune was president and treasurer.
Pursuant to the accepted proposal, Amory performed his work, completing it in December 1997. Amory was not told he was working for anyone other than what he thought to be a partnership called “South Shore Realty Investors.” He normally did not conduct a title search to confirm that a client was the record owner of property on which he worked, and he did not do so here. Atlan apparently made the only payment to Amory, of $2,500.00. The balance, nearly $13,000.00, was not paid. Amory filed suit in 1998 against Checroune and Atlan. Atlan was never served. In October 2002, Amory amended his complaint to add South Shore as a defendant. The trial judge found in Amory’s favor, against both Checroune and South Shore. Checroune appealed the finding in general, but at the trial judge’s rulings on his request for rulings with a mention that does not rise to the level of appellate argument and so effectively waives appellate consideration of those requests.[2] Dist./Mun. Cts. R. A. D. A., Rule 16(a) (4); see, e.g., Ward v. James, 1999 Mass. App. Div. 208, 209.
Checroune’s argument is based in agency law; Amory’s, in partnership law. Checroune asserts he was acting solely as an agent for South Shore, the disclosed principal, or for some undisclosed principal, and cannot be found individually liable in either case. See, e.g., Williams v. Vanaria, 2000 Mass. App. Div. 162; Basbanes v. Philip R. Boncore, P.C., 1993 Mass. App. Div. 208 and cases cited.[3] Amory asserts, on the other hand, that his uncontroverted trial testimony established that Checroune and Atlan had held themselves out to him as partners doing business as “South Shore Realty Investors,” and thus Checroune could be, and properly was, found personally liable as an ostensible partner.
Checroune’s argument, in part, assumes a duty on Amory to ascertain the precise identity of the owner of the building. Had Amory checked at the Registry of Deeds — between 16 and 29 October 1997 — he would have learned, the argument runs, that South Shore owned the building and would thus have realized Checroune was acting on behalf of that corporate principal. This Court is provided nothing, though, suggesting either that Amory’s failure to research deeds was somehow a failing on his part, or that he is charged with knowledge of the deed to South Shore simply because it was available in the Registry of Deeds for his inspection. Checroune suggests further that even if Amory were ignorant of the deed and had no duty to search for it he knew Checroune and Atlan “were acting *14 on behalf of another entity” because Amory himself used the name “South Shore Realty Investors” in the letter contract he drafted and on his invoices. It does not follow, however, that Amory’s awareness of the name “South Shore Realty Investors” signifies he should have then gone on to deduce there was a corporate principal of that or a similar name for which Checroune was an agent. Amory believed the name was simply one under which Checroune and Atlan did business. There was, in short, no evidence tending to urge the trial judge to find that Amory knew or should have known that Checroune was acting as agent of any corporate entity, disclosed or undisclosed, and none suggesting Amory was unjustified in believing Checroune and Atlan were partners.[4]
Having so said, we go on to observe that the main substantive issue here was whether the doctrine of partnership-by-estoppel applied. See M.G.L.c. 108A, §16. Amory’s position is essentially that the trial judge properly found Checroune individually liable because Checroune and the absent Atlan had held themselves out to Amory as partners and so could not later deny that relationship.[5] Whether partnership-by-estoppel may be found is a question of fact. Atlas Tack Corp. v. DiMasi, 37 Mass. App. Ct. 66, 68 (1994), citing Mersick v. Bilafsky, 205 Mass. 488, 492 (1910). Although evidence on that issue was meager,[6] Checroune does not here attack the sufficiency of the evidence regarding the existence of an apparent partnership that included Checroune. Specifically, Checroune does not attack the trial *15 judge’s rulings on his requests for ruling touching on the sufficiency of the evidence.[7] Checroune has therefore forfeited any appellate consideration of that issue, and this Court will not disturb the trial judge’s finding in favor of Amory. See, e.g., Commonwealth Ins. Co. v. Vigorito, 2003 Mass. App. Div. 26, 28 and cases cited.
Checroune argues further, with some cogency, that when Amory finally learned that South Shore did exist and then added it as a defendant, he thereby assumed a duty to elect whether he would look to the agent (Checroune) or the principal (South Shore) for recovery, because he cannot recover judgment against both. Moniz Excavating Co. v. Tupick, 1991 Mass. App. Div. 124, citing, inter alia, Marsch v. Southern New Eng. R.R. Corp., 230 Mass. 483, 499 (1918). But the problem is that this issue was not raised at trial, and this Court is presented nothing indicating it was raised at any time below. We may not consider it now. E.g., Brown v Koch Membrane Sys., Inc., 2001 Mass. App. Div. 210, 213, quoting Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 11 (1998), quoting in turn from Commonwealth v. Olson, 24 Mass. App. Ct. 539, 544 (1987) (“A lawyer cannot try a case on one theory and then, having lost on that theory, argue before an appellate court about alleged issues which might have been, but were not, raised at the trial. ... The appeal must be based on what took place at the trial, not on anything... presented for the first time before an appellate court.”); see also, e.g., Child v. Child, 58 Mass. App. Ct. 76, 84 (2003), citing, inter alia, M.H. Gordon & Son v. Alcoholic Bevs. Control Comm’n, 386 Mass. 64, 67 (1984). Accordingly, we affirm the judgment in favor of Amory.
So ordered.

 Neither South Shore nor Paul Atlan is a party to this appeal. Although South Shore’s name appears in the caption and pleadings as “South Shore Realty, LLC,” its actual name was “South Shore Realty Investors, LLC.”

 Checroune filed requests for rulings, on all of which the trial judge ruled, although several of them mixed issues of fact and law upon which he need not have ruled, see, e.g., Cummings Properties, LLC v. Empire Techs., Inc., 2002 Mass. App. Div. 84, 85. Specifically, the trial judge denied requests that Checroune never contracted with, nor authorized anyone to contract with, Amory for services, and that Checroune never impliedly agreed to pay Amory for his services. See notes 3 and 6 below.

 Checroune focused on the “disclosed principal” argument. Even if one considered South Shore a “partially disclosed principal,” one purporting to contract with another for a partially disclosed principal is a party to the contract unless there is an agreement otherwise. Atlantic Salmon A/S v. Curran, 32 Mass. App. Ct. 488, 491-92 (1992); see also, e.g., Fillion v. Cardinal, 2000 Mass. App. Div. 284, 286-87. “It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose not only that he is acting in a representative capacity, but also the identity of his principal.” Atlantic Salmon, supra, at 492.

 Checroune’s requests for rulings contain these two propositions: “4. Where an agent (Paul Atlan) acts within the scope of his authority for a disclosed principal (South Shore Realty, LLC), he does not bind himself or Checroune unless it appears that he expressly agreed to become personally responsible. Cass v. Lord, 236 Mass. 430 (1920) ’’and “5. A person who makes or purports to make a contract for a disclosed principal does not become a party to that contract and is not liable on that contract. Porshin v. Snider, 349 Mass. 653 (1965).” To these requests the trial judge ruled “Allowed as to that holding.” The trial judge thereby agreed the requests set out good law but found them inapplicable to the facts of this case. As noted above, Checroune’s brief does not in any event adequately challenge the trial judge’s rulings on any request.

 M.G.L.C. 108A, §§13 & 15, read together, provide that partnership liability resulting from “any wrongful act or omission of any partner” is borne jointly and severally by all partners. See, e.g., Kirkland Constr. Co. v. James, 39 Mass. App. Ct. 559, 560 n.3 (1995). Thus, were Checroune a partner, either real or apparent, he could be held individually liable for his own acts or those of Atlan. As a general proposition, to prevail on that theory, Amory would have had to have proven: (1) that Checroune had held himself out as a partner; (2) that Checroune had effected such holding out either directly or with his consent; (3) that Amory knew of such holding out; and (4) that Amory relied on the ostensible partnership to his prejudice. Atlas Tack Corp. v. DiMasi, 37 Mass. App. Ct. 66, 68 (1994), citing Brown v. Gerstein, 17 Mass. App. Ct. 558, 571 (1984).

 Amory, the sole trial witness, testified he understood Checroune and Atlan were partners. The basis, though, of that understanding was thin. Asked about the source of that understanding, Amory said Checroune called him to say “we” were ready to proceed with the project. (Amory also testified, though, that he understood Atlan “would be handling the project for the partnership”)”). Asked if “they” — Checroune and Atlan — told Amory they were partners, Amory answered, “I believe so, yes. Again, this was five years ago.” The trial judge then ruled that anything Atlan had said on that topic was inadmissible hearsay since Atlan was not a defendant, having never been served. Whether Checroune himself had said anything to Amory about he and Atlan being “partners” was not demonstrated.

 On requests to the effect that the evidence warranted a finding for Checroune and against Amory, the trial judge ruled he did not so find. See Canty v. Arbella Mut. Ins. Co., 1998 Mass. App. Div. 32, 34-35. The trial judge denied a request that the evidence permitted a finding for Checroune.